JOHN H. BARNARD, Plaintiff in Error, *v.* JAMES DUNCAN, Defendant in Error.

1. *Vendors and Purchasers—Trustees—Covenants.*—A trustee undertakes only to convey the title vested in him by the deed giving him the power, and cannot be required to enter into any personal covenants against encumbrances in general. The only covenants which can be required of a trustee executing a mere naked power, is the usual trustee covenant against acts and encumbrances done or suffered by himself.

2. *Vendors and Purchasers—Mortgages.*—The purchaser, at a sale made by a mortgagee or trustee selling under a power to sell for the payment of debts, must take notice of the title and its defects as it appears of record.

3. *Mortgages—Deeds of Trust—Sale—Damages.*—Where the trustee, in a deed of trust with a power of sale at public auction upon giving notice for a certain number of days, advertises the property and puts it up for sale, and the property is struck off to a bidder, the trustee cannot upon the same day resell the property because the purchaser refuses to complete his contract; there must be a new publication of notice. The difference in price between the two sales in such a case is not the proper measure of damages.

4. *Vendors and Purchasers—Notice of defects of Title—Trustees—Fraud.*—At a sale by a trustee under a power where the facts or means of information concerning the condition and value of the thing sold are equally accessible to both parties, and nothing is said or done which tends to impose on the other or to mislead him, there is no fraud of which the law can take notice; but where material facts are accessible to the vendor only, and he knows them not to be within the diligent attention, observation and judgment of the other party, he is bound to disclose those facts and make them known to the purchaser. The vendor must disclose all material facts of which he knows the vendee to be ignorant. There may be fraud in the suppressing and concealing of material facts, as well as in direct misrepresentation, if the other party is knowingly suffered to deal under a delusion.

*Error to St. Louis Circuit Court.*

The plaintiff sued to recover the amount bid by defendant, at a sale made by plaintiff as trustee, of lands conveyed to him as trustee. The petition set out the deed, by which W. D. W. Barnard conveyed the land to him, dated June 27, 1860, in trust to pay certain debts described; the exposing the land to sale at auction; the auctioneer's memorandum of defendant as purchaser for $2,250; the tender of a deed to defendant, and his refusal to accept; a re-sale on the same day for $25; and prayed judgment for the difference.

The answer admitted the conveyance to the plaintiff, the sale, and defendant's bid; denied tender of a deed, but admitted his refusal to pay his bid; ignored all the proceedings at the second sale, and denied all fraudulent conduct at the sale. The answer then alleged that, by his deed to the plaintiff, W. D. W. Barnard covenanted that he had an indefeasible estate in fee simple in said lands; that said lands were free of encumbrances suffered or done by him, and for further assurance; and then alleged that the grantors were not so seized, and that they had by previous deeds sold and conveyed said lands so that they had no title to convey. It then alleged that the grantors had, by deed of trust duly recorded, dated June 25, 1860, encumbered said lands to an amount exceeding $30,000, twice the value of the lands. It then set out prior encumbrances made by W. D. W. Barnard upon the premises, in 1857 and 1859, to the amount of over $8,000. It then claimed that plaintiff was by the sale bound to convey a good title free of encumbrances; and that as plaintiff could not make title, he could not recover.

At the trial, plaintiff read the deed under which he made the sale, dated June 27, 1860, recorded June 28, 1860; this deed contained the statutory covenants created by the words "grant, bargain, and sell." Burnes, the agent of plaintiff, and his attorney, proved a tender of a deed to defendant on the day of sale, a demand for the amount bid and a refusal, and the re-sale; and that he wrote the deed of June 27, 1860, and the prior deed of June 25, 1860—recorded June 27, 1860—to the same trustees, to secure specified debts for over $30,000; and that no time was allowed for examining the title.

E. G. Obear, the auctioneer, proved the memorandum made by him; that no public statements were made by him about the title or the encumbrances, but that defendant applying to him, he told him that he had heard that the encumbrances were from $9,000 to $12,000, and that defendant declined complying with his bid because the property was

encumbered to a much larger amount than had been stated to him ; that the property, if clear, might bring $20,000.

Dr. Marshall testified that himself and defendant were the only bidders ; that Duncan bid $1,000, and he then bid $2,000, when the plaintiff came over to where he was standing and asked if he knew what he was bidding on ; Dr. M. replied, he thought he did—when the plaintiff told him that the encumbrance was larger than he had any idea of ; that he thought he was bidding $12,000 for the property ; and, taking this as an act of kindness on plaintiff's part, he stopped bidding, and at the next bid it was knocked down to the defendant at $2,250 ; that he thought the property worth $15,000.

Defendant then proved the encumbrances on the property to amount to over $30,000.

Plaintiff, in rebuttal, introduced evidence showing that part of the prior encumbrances had been paid off, and that of the assets conveyed by deed of June 25, 1860, in the course of four or five years some $4,000 might be realized in relief of the encumbrance, and that at the sale the amount due upon the encumbrances was only $14,691.50. This would have made the cost of the property to the defendant $17,000.

The court then gave the two following instructions asked by the defendant :

1. If the deed to plaintiff purported to convey a valid title, with good warranty, and if the plaintiff, as trustee, offered for sale the lands described in the petition, and neither in the advertisement nor at the sale gave notice to the bidders that the land was encumbered, or that the title was defeasible by virtue of prior deeds of trust executed by his grantors and not named in said deed to plaintiff, then he was bound to offer to defendant, as the highest bidder at the sale, a deed conveying a good title in fee simple, free and clear of any encumbrances which could defeat the title conveyed.

2. If the defendant, at the sale, or immediately prior thereto, applied to E. G. Obear, the auctioneer, to know the

amount of the encumbrances, and by said auctioneer, acting for the plaintiff, was informed that the encumbrances amounted to between $9,000 and $12,000, and made his bid upon such information, believing the same to be true, and plaintiff, being present, did not correct such statement, and if, in fact, the encumbrances amounted to nearly $14,691.65, then the defendant is not liable in this suit for refusing to accept a deed and to pay the sum bid by him.

The plaintiff asked the following instructions, which were refused by the court :

1. At a sale of real estate at public auction by a trustee, under a deed of trust duly recorded to secure the payment of debts, the trustee does not by such sale undertake to convey any other or greater estate than was conveyed to him by the deed of trust under which he proposes to sell, unless by special agreement he undertakes otherwise, or renders himself otherwise liable by his representations, or those of some one else for him.

2. At a sale of real estate at public auction by a trustee, under a deed of trust duly recorded to secure the payment of debts, the rule *caveat emptor* applies, as against a bidder at such sale.

3. At a sale of real estate at public auction by a trustee, under a deed of trust duly recorded to secure the payment of debts, a bidder at such sale will not be released from his bid by reason of the fact merely that said real estate is subject to a prior deed of trust, which is also duly on record showing its priority. The bidder is chargeable with notice of such record, and is presumed to bid with such notice.

4. If a purchaser at a sale of real estate at public auction by a trustee, under a deed of trust to secure the payment of debts, knows that at such sale he can only buy the equity of redemption to such real estate, subject to a prior deed of trust to secure prior debts, also duly recorded showing its priority, then he bids at such sale at his peril, the rule *caveat emptor* applying thereto.

.12—VOL. XXXVIII.

5. The rule which protects *bona fide* purchasers does not apply to purchasers of a mere equity of redemption, who purchase with knowledge that it is only an equity of redemption which is being sold.

6. The auctioneer, in stating the amount of prior encumbrances, had a right to deduct therefrom the value of the effects which were pledged for the payment of such prior encumbrances; and his estimate, thus honestly made, gives full notice to any bidder to whom it is communicated.

7. The defendant in this cause cannot avail himself of any supposed defects in the deed tendered to him by the plaintiff because he refused to comply with his bid and accept a perfect deed.

On giving the instructions asked by the defendant, and refusing those asked by the plaintiff, the plaintiff took a nonsuit, with leave to move to set the same aside.

*C. F. Burnes* and *Holliday*, for plaintiff in error.

The court erred in giving the instructions asked by the respondent, and in refusing the instructions asked by the appellant—Gardner v. Armstrong, 31 Mo. 536.

I. The deed to plaintiff does not "purport to convey a valid title with good warranty." The only ground upon which it could have been so construed was because the words "grant, bargain and sell" were not in the granting clause. The deed to the plaintiff is not such a conveyance as is required by the statute of Missouri, in order to raise the covenants provided by the statute by using the words "grant, bargain and sell." The statute is, "the words 'grant, bargain and sell,' in all conveyances in which any estate of inheritance in fee simple is limited, shall  *  *  be construed to be the following express covenants," &c.—R. C. 1855, p. 357, § 14. Blackstone, in defining "an estate of inheritance in fee simple," says: "A fee therefore, in general, signifies an estate of inheritance, being the highest and most extensive interest that a man can have in feud; and when the term is used simply

without any other adjunct, or has the adjunct of simple annexed to it (as a fee or fee simple), it is used in contradistinction to a fee conditional at common law, or a fee-tail by the statute, importing an absolute inheritance clear of any condition," &c.—2 Blacks. 106.

II. In the case of Gale v. Mensing, 20 Mo. 461, property was conveyed to trustees, including real estate, to pay debts. The trustee had the power to sell at public or private sale, as in the deed to plaintiff, and some of the land was subject to a prior mortgage. The estate conveyed was exactly the same as by the deed to plaintiff. Judge Leonard gave the opinion of the court, and, in speaking of the estate conveyed, says, " the deed was not a mortgage, but a conveyance of the whole title * * * a transfer of the legal ownership, upon the trusts declared in it, subject to Caldwell's mortgage." Caldwell's mortgage does not appear to have been mentioned in the conveyance to the trustees.

III. Even if the deed to plaintiff conveyed an " estate of inheritance in fee simple," still the express language that there are three prior unsatisfied deeds of trust on the land, and that the trustees take subject to those encumbrances, releasing them or not, as they deem proper, with trust moneys arising under the deed,—this express language of the deed prevents the raising of the statutory covenants from the use of the words "grant, bargain and sell"—Sheldon v. Pease, 10 Mo. 473.

IV. This instruction is further erroneous in requiring the plaintiff, as trustee, to offer to the defendant " a deed conveying a good title in fee simple, free and clear of any encumbrances which would defeat the title conveyed." What kind of a deed is required by this instruction? Would it require the words " grant, bargain and sell"? Would it require a covenant against encumbrances?

As to the usual form of a trustee's deed, see Whittelsey's Missouri Form Book, p. 323, form 226.

" A person," says Hill on Trustees, " who conveys merely as trustee, can be required to enter into no covenants for

title beyond the usual covenant that he has done no act to encumber"—Hill Trust. 481.

In Cruise Dig., we have the law stated to be, "where all the money to arise from the sale of an estate is to be applied in payment of debts, a purchaser can only require a covenant from the trustees, or devisees, that they have done no act to encumber. And it is the same where the purchase is made from the assignee of a bankrupt—Sto. Eq. § 1038." (4 Crui. Dig., Tit. 32, ch. 26, § 87 ; Ennis v. Leach, 1 Ired. Eq. 416.)

*Whittelsey* and *G. S. & J. Van Waggoner*, for defendant in error.

I. Every agreement to sell land is an agreement to convey the land with a good title thereto, or for a sale in fee simple.

In Kent v. Allen, 24 Mo. 98, 106, it was said by this court, "that, if the owner send land into market for sale, he gives assurance to the world, by implication at least, that he has a valid title to that land both in law and equity."

A title is implied, unless by the terms of the offer or contract it is excluded—1 Sug. Vend. 455 ; Sto. Sales, § 462 ; Chit. Cont. 245–7 ; Hughes v. Parker, 8 Mee. & W. 244 ; 3 Nev. & Man. 40 ; Spritt & Jeffrey, 10 B. & C. 249 ; Shepherd v. Keatly, 1 Cro. M. & R. 117 ; Hall v. Beatley, 4 Man. & G. 410 ; Ogilvie v. Foljambe, 3 Meriv. 53 ; Sowter v. Drake, 5 B. & Ad. 992 ; Coster v. Clark, 3 Ed. Ch. 428.— See also Washington v. Ogden, 1 Black, U. S. 450, which was a suit at law.

Where a party cannot enforce a specific performance for want of title, he cannot recover damages at law—Chit. Cont. 246 ; notes to Seeton v. Slade, 2 Wh. & Tud. L. C., Pt. 2, 3 ; Beckwith v. Koons, 6 B. Mon. 222.

In Dickson's v. Desire's Adm'r, 23 Mo. 151–9, Leonard, J., says : "The sale of a thing imports, from its very nature, an obligation on the part of the seller to secure to the purchaser the possession and enjoyment of the thing bought— the right to possess and enjoy being really that which is pur-

chased." So, if a man contract to convey with warranty, his contract is not satisfied by simply making and tendering a deed with covenants, &c.; he must have a good and perfect title to the land he agrees to sell—Luckett v. Williamson, 31 Mo. 54; Everson v. Kirtland, 4 Paige Ch. 269; Major v. Edwards, 12 Mo. 137; S. C. 10 Mo. 671; Smith v. Busby, 15 Mo. 387.

The plaintiff evidently sues upon the idea that a trustee, like a sheriff, sells only the interest of the debtor in the property, and that a bidder bids at his own risk; in other words, that the rule *caveat emptor* applies. This rule applies only to sales by the sheriff under execution—forced sales by virtue of the writ of execution; but this is not a universal rule in the different States, and even in this State relief is sometimes granted where the title fails, as in the case of Maguire v. Marks, 28 Mo. 193. So also in cases of partition sales, the sale may be set aside for defect of title—Nieman v. Early, 28 Mo. 477; Jackson v. Edwards, 22 Wend. 498–509; Smith v. Brittain, 3 Ired. Eq. 347; 1 Hopk. Ch. 436; 2 Paige, 586. No man should be enriched at another's expense without compensation—Vallé v. Fleming, 29 Mo. 152. We submit that trustees' and partition sales do not stand on the same footing as sheriffs' sales.

The case of Gardner v. Armstrong, 31 Mo. 535, relied upon by plaintiff, does not here apply, for in that case the title sold was good, and no defect was shown. In the case of Coons v. North, 27 Mo. 73, a trustee's sale, contract executed, was set aside upon the ground of mistake of parties as to the quantity of land conveyed.

But a trustee is, in effect, the agent of the debtor, appointed by him, and a failure of title is a good defence to an action by the trustee even in case of an executed contract—Long v. Gilliam, 28 Mo. 560. In Jones v. Stanton, 11 Mo. 33, relief was given to a purchaser of land who had given his notes, upon the ground of defect of title in the vendor, and his insolvency.

The deed of W. D. W. Barnard to plaintiff was a convey-

ance with covenants of indefeasible seizin, and against his own encumbrances, by using the words " grant, bargain and sell." This deed did not recite nor refer to previous encumbrances — Mosely v. Hunter, 15 Mo. 322; Alexander v. Schneiber, 10 Mo. 460; Shelton v. Pease, 10 Mo. 473; Pecare v. Chouteau, 13 Mo. 527; Dickson v. Desire, 23 Mo. 151; Chambers' Adm'r v. Smith's Adm'r, 23 Mo. 174. Under this deed the plaintiff really had no title, for it had been previously conveyed to trustees by other deeds: he, therefore, could not convey a title in fee, or free of encumbrances. The trustee advertised to sell the land by virtue of a deed of trust, which contained covenants that the grantor had a title which could not be defeated by anything—that is, a covenant for an absolute title in fee; and also, that it was free of encumbrances done or suffered by the grantor. The purchaser who looked to this deed was authorized to expect a good title from the trustee, and not a deed with a defeasible title, nor a title encumbered to twice the value of the property.

II. The sale was not fairly made. The plaintiff, by his conduct in trying to save a friend from a bad bargain, thereby prevented a person from bidding who might have outbid the defendant, and thereby have relieved him from his contract.

At auction sales, the utmost fairness must be observed, so that parties be not entrapped; nor may bidders combine to depreciate the property—2 Kent Com. 537; 1 Sto. Eq., § 293; Chit. Contr. 237-9; Worton v. Hinkle, 20 Mo. 290; Neal v. Stone, 20 Mo. 294; 22 Mo. 349.

The defendant met the equity of the plaintiff's case. He admitted that the auctioneer informed him that the property was encumbered to the amount of ten thousand dollars, and both he and Marshall, the other bidder, supposed they were bidding about $12,000 for the property. For the plaintiff to put one person upon his guard, by telling him that the property was encumbered to a larger amount than he had supposed, was entrapping strangers.

III. It would be inequitable to compel the defendant to stand by his bid made under a mistake of fact as to the amount of the encumbrances. He was informed that they amounted to between $9,000 and $10,000, and he was willing, under that information, to give $12,000 for the property.

The auctioneer was an agent for the plaintiff. No notice was given at the sale that the property was sold subject to prior encumbrances; but the defendant, bidding upon the information he had received of the auctioneer, might in equity be bound to take the property encumbered to that amount, $10,000, but for nothing more. He was under a mistake—Coons v. North, 27 Mo. 73.

As a general rule, where a court of equity would not enforce the specific performance of a contract for the purchase of lands, the vendor cannot recover damages for a breach of the contract. In some cases, courts of equity will go farther than courts of law. At law, the vendor must have the title when he tenders the deed; in equity, it is sometimes sufficient if he can make the title at the trial.

In this case, the plaintiff sues for damages for refusing to complete the contract, when the plaintiff had not the title to convey, and the property was encumbered to the amount of twice its value, or more. At the best, the encumbrances upon the property were at least $30,000.

In sales under decrees of a court of chancery, the purchaser has the opportunity of declining the purchase if the title be defective—2 Dan. Ch. Pr., Am. ed. 1846, N. L. L. & Eq., 801, 902 et seq. & 911, 913, 919—ed. 1865, pp. 1273–5, n. 5, & 1281; Seaman v. Hicks, 8 Pai. Ch. 656; Post v. Leet, 8 Pai. Ch. 337. A purchaser at master's sale, who is notified of risk in the title, will not be compelled to take unless he can get the legal and equitable estate—Coster v. Clarke, 3 Ed. Ch. 428. So he may be relieved on account of mistake—bidding an unreasonable price—Dan. Ch. Pr., ed. 1865, p. 1283–4.

So in partition sale, if title not made good—Jackson v. Edwards, 22 Wend. 498–509. Purchaser not bound to ac-

cept a doubtful or merely equitable title—1 Hopk. 436 ; 2 Pai. 586. A partition sale is not a sale *in invitum*, but a mode of sale by the parties themselves—Smith v. Brittain, 3 Ired. Eq. 347 ; hence a purchaser may have the money paid back before conveyance executed.

HOLMES, Judge, delivered the opinion of the court.

This was a suit by a trustee vendor against his vendee at a sale at public auction of real estate under a deed of trust, made to secure the payment of the debts of numerous creditors, grounded on an alleged breach of contract by the purchaser in refusing to pay the amount of his bid and accept the deed that was tendered to him, conveying all the right, title and interest in the property that was vested in the trustee, but containing no covenants of warranty whatever, and the action sounded in damages. Upon the refusal, there was a re-sale of the property, a few hours afterwards, on the same day, without a re-advertising or any new notice given, resulting in a difference in the price amounting to some $2,225, which the plaintiff seeks to recover by way of damages.

The answer of the defendant denied the material allegations of the petition. The defence rests mainly upon the grounds that the deed tendered to him did not contain a full warranty of the title, and that the property was encumbered to a much larger amount than he was aware of; that misstatements of fact, or erroneous information, was given to him by the auctioneer with regard to the encumbrances just before the sale took place, by which he was led into mistake as to their amount ; that the sale was fraudulently made, and that he is not liable for damages.

The conveyance that was made to the trustee was in the form of an ordinary deed of trust in the nature of a mortgage to secure the payment of debts, and was, in this instance, more like an assignment for the benefit of creditors than a simple mortgage for the security of a particular demand, the beneficiaries being numerous; and it contained the usual power to sell and convey the property, and apply

Barnard v. Duncan.

the proceeds of the sales to the satisfaction of the debts nam-
ed, according to the trusts declared in the instrument. It
contained covenants of warranty of title and against encum-
brances. The defendant insists here that he was entitled to
demand a deed from the trustee, containing the same or sim-
ilar covenants. Whether he expected the original grantors,
or the beneficiaries, to join in the deed with the trustee, and
make those covenants, or that the trustee should make them
as his own personal covenants, does not very clearly appear.
But in either case there is no warrant in law for such a de-
mand. The sale is not made by the original owners. It was
a sale by the trustee in his fiduciary capacity only. The
trustee undertakes only for the execution of the power that
is given him, and he is only authorized to sell and convey
the title which is vested in him by the deed. He was not
empowered to make a deed in the name of the grantors to
him, nor to execute any covenants in their names. Nor can
he be required to enter into any personal covenants for title
or against encumbrances in general. The only covenant that
can be demanded of a mere naked trustee, who has no inter-
est in the property, beyond the bare legal title, in any case
of this kind, is the usual trustee covenant against acts or en-
cumbrances done or suffered by himself—Rawle Cov. 566.
This covenant was not demanded. The deed tendered was
refused, as it seems, absolutely, for the reason that it did not
contain full covenants of general warranty. The written
note sent by the purchaser to the trustee demanded a deed
that was *good.* Precisely what this might mean, unexplain-
ed, we need not stop to inquire, inasmuch as the defendant
rests his case here, upon the broad ground that he had a
right to demand a general warranty.

It seems to have been the practice of the courts of chan-
cery in England, in cases of sales by trustees, or under or-
ders of court, to require the *cestui que trusts,* who were to
receive the proceeds of the sales, to join with the trustees,
and enter into covenants of warranty of the title. But even
this doctrine appears to be of questionable authority in these

later times, in a case of this kind ; nor does it appear to have been recognized in this country. Such a principle would have to be extended to all trustees for the payment of debts, assignees of insolvents, executors, administrators, guardians; and the execution of numberless trusts would be thereby rendered impracticable, or wholly impossible—Duchess of Rutland v. Wakeman, 8 Bro. Par. Cas. 159. Lord St. Leonard thought it might still be applied in some cases of two or more *cestui que trusts ;* but admitted that were trustees sell for the payment of debts, the purchaser is not entitled to any covenants for the title, because no line can well be drawn as to the *quantum* for which the several beneficiaries should be required to covenant. The principle relates to parties who are presumptively interested as beneficiaries. Mr. Rawle concludes that the correct test of the application of such a rule would be the extent of the purchaser's liability to see to the application of the purchase money—Raw. Cov., 3 ed., 568, n. 2. The matter would seem to depend upon the jurisdiction of a court of equity, in a proper case, as when one of the parties should come into court to enforce a specific performance against the other. And further, inasmuch as the statute expressly exempts the purchasers, in these cases, from any responsibility for the application of the purchase money by the trustees, the rule as limited can have no application here—R. C. 1855, p. 1556, § 9. This is simply an action at law for damages on breach of contract.

The defendant claims that he is entitled to the benefit of the covenants contained in the conveyance to the trustee. He can derive no advantage from these otherwise than as assignee of the trustee. If he had accepted the deed of the trustee, he would have become the owner of the estate for the time being, and as such would have had all the protection which those covenants could have afforded him, without any covenant of warranty from the trustee. Even a sheriff's deed has been held to be effectual for this purpose— Dickson v. Desire, 23 Mo. 151 ; Raw. Cov. 352, 360.

The case belongs to the class of fiduciary vendors, as exec-

utors, administrators, guardians, mortgagees, assignees for the benefit of creditors, and other like trustees, who have no other interest in the property than a legal title with power to sell and convey, and who are not bound to give any other covenant than the ordinary trustee covenant against their own acts—Raw. Cov. 566, 3 ed. They cannot be compelled to enter into any other covenant. They are mere agents to sell and convey, and trustees to execute the trusts declared. They have power to sell and convey such title as is vested in them, and to make such deed as will be effectual to convey that title, and no more, unless expressly empowered and authorized by the conveyance made to them to enter into other covenants in the names of their grantors. Such agents have no authority to bind their principals or grantors by covenants in their names. Their conveyances are good and effectual without either warranty or personal covenants, and an authority to convey merely, gives no implied power to make covenants—Nixon v. Hyserott, 5 J. R. 57 ; Van Epps v. City of Schenectady, 12 J. R. 435. The exemption of this class of vendors from personal responsibility, except where fraud exists, or they voluntarily enter into personal covenants of warranty, would seem to be indispensable ; for otherwise no one would be found willing to accept such offices and trusts—Worthy v. Johnson, 8 Geo. 241 ; Avon v. Beckom, 11 Geo. 1. Such trustees sell only by virtue of the powers given them. They do not undertake to convey anything more than the right, title and estate that is vested in them. All purchasers are bound to know that there can be no warranty of the title on such sales, and, it is presumed, it is always so understood. The title is on record ; the records are open to all, and the purchasers can examine the title for themselves. There being no warranty, the rule of *caveat emptor* must necessarily be applied in reference to the conveyance, except as to the ordinary trustee covenant which the vender may require. We see no good reason why this covenant should not be required of this trustee. He could not well object to covenanting against acts or encumbrances

done or suffered by himself. And if the purchaser had objected to the deed on this ground, there would have been no cause of action against him here. He absolutely refused to complete his purchase unless a deed with full general warranty of title were tendered. We think this amounted to a waiver of any demand for a covenant against the trustee's own acts merely, and of all objection to the deed that was tendered on that ground alone.

It appears that the records do not furnish any true criterion of the exact amount of the encumbrances which still remained unpaid on this property. This information could scarcely be obtained otherwise than from the trustee himself. No application was made to him for information on this head. He made no statements or representations on the subject. But the defendant, just before the sale, inquired of the auctioneer about the amount of the encumbrances. He answered that he did not know, but had heard that they amounted to a given sum named. Such statements could furnish no ground on which any man of prudence and judgment would venture to rely. They do not appear to have been such as could have materially influenced his judgment. We do not think they were such misstatements or misrepresentations as could be considered to have been fraudulently made, even if the information given had turned out not to be entirely true and correct. Statements which are mere matter of opinion, on hearsay information, cannot be supposed to influence the judgment of the purchaser — 1 Sto. Eq., § 197. But the other evidence, so far from showing the information given to have been inaccurate or false, tended rather to establish its entire correctness. There was nothing in this circumstance, taken by itself alone, on which to ground a charge of fraud.

Within a few hours after the sale had taken place, a deed was tendered to the defendant purporting to convey all the title that was vested in the trustee, and which he had power to sell, but containing no covenants of warranty, and payment of the amount of the bid was demanded. Upon the

refusal to accept it, the trustee proceeded at once to put up the property for sale again, at the same place, on the same day, without re-advertising or any new notice, and, few persons being present, the property was re-sold for twenty-five dollars. This proceeding can neither be justified nor sustained. It was, in practical effect, a sale without notice. The sale, as advertised, had taken place several hours before, and all bidders had departed. Though yet within the hours mentioned in the advertisement, it cannot be considered a fair and valid sale pursuant to notice. There should have been a new publication of notice for another day. This was done in the case of Gardner v. Armstrong, 31 Mo. 536. Under these circumstances, the difference of price between the two sales was no proper measure of the damages. In Gardner v. Armstrong, it was held that the difference of price between the two sales, fairly made on due notice, might be taken as a criterion of the damages actually sustained, though not as conclusive. We see no reason for departing from this decision ; but it is still to be borne in mind that the common law rule is, to give no more damages than the actual loss sustained. Where the property is shown to be still worth as much as was bid for it, the damages can be little more than nominal — Sedg. Dam. 100–2. For these reasons, we think the first instruction that was given for the defendant was entirely erroneous.

The second instruction given for the defendant might properly have been given, if there had been a sufficient basis for it in the evidence : it refers exclusively to the statement made by the auctioneer in answer to the defendant's inquiries. As an instruction upon the matter of fraud in making the sale, it placed the subject on too narrow ground. The trustee was himself there present as the person making the sale. It appears that there were other deeds of trust, and other property, real and personal, conveyed by this deed, for the payment of these same debts, and that the amount of the encumbrance actually existing upon the land offered for sale

would be greatly affected by the application of the proceeds of other property sold, and by the amount to be realized from other property not yet sold, in reduction of the encumbrance on this land. This was a matter of fact which for the most part could be known only to the trustee, and of which he alone was in a situation to judge with any certainty. These facts could not be ascertained by any examination of the records of the recorder's office, and were not equally open to both vendor and vendee. Where the facts, or means of information, concerning the condition and value of the thing sold are equally accessible to both parties, and nothing is said or done which tends to impose on the other, or to mislead him, there is no fraud which the law can notice; but where material facts are accessible to the vendor only, and he knows them not to be within the reach of the diligent attention, observation and judgment of the other party, he is bound to disclose such facts, and to make them known to the purchaser. It is only where such attention on the part of the vendee might enable him to ascertain the facts, and protect himself against surprise, mistake, or imposition, that the maxim *caveat emptor*, in this matter of fraud, ought to be applied to him. The vendor must disclose all material facts of which he knows the vendee to be ignorant. There may be fraud in suppressing and concealing material facts and circumstances, as well as in direct misrepresentation, if the other party is knowingly suffered to deal under a delusion— 2 Kent Com. 482–5. These were proper matters to be submitted to the jury on the question of fraud on the part of the trustee in making the sale; and evidence tending to show that disclosures of such material circumstances were made by the trustee privately to one bidder, who was thereby deterred from bidding further, and which were not publicly stated to all present, would certainly be admissible and competent, by way of showing an actual and fraudulent suppression of the truth.

The first instruction refused the plaintiff should have been

given. The third, fifth, sixth and seventh might very well have been given also. As to the second and fourth, they must be held to have been rightly enough refused, as making an incorrect and improper application of the maxim *caveat emptor.* In reference to the title, it is more accurately a question of warranty, or no warranty, than of *caveat emptor,* though if the purchaser buys without warranty he takes the responsibility of the title being good, and so far may be said to buy at his peril.

In reference to examining records it is the same; of course, the party may examine the records or not, at his own peril. But the more special and peculiar application of this maxim belongs to the contract of sale of goods, and the question of fraud or of implied warranty; but in respect of conveyances of real estate, as laid down by Lord Coke, the common law binds not the vendor, " unless there be a warranty either in deed or in law, for *caveat emptor, qui ignorare non debuit quod jus alienum emit*—let the purchaser exercise proper caution, for he ought not to be ignorant of the amount and nature of that person's interest which he is about to purchase." —Broome's Leg. Max. 354. In other words, if the purchaser buys real estate and takes a deed without covenant of warranty, he takes the risk of the title on himself; he must examine the title for himself, and so far the rule of *caveat emptor* may be said to apply to him. But misrepresentations or suppression of material facts are matters collateral to the written contract or deed, and may be inquired into on the ground of fraud—*Ibid.* 361.

We think there should be a new trial, upon instructions better adapted to the nature of the case.

Judgment reversed and the cause remanded. Judge Wagner concurs; Judge Lovelace absent.