JEROME B. DOVER, Respondent, v. THOMAS J. KENNERLY et al., Appellants.

1. *Mortgages—Auction Sales—Deeds of Trust.*—Where property offered for sale at auction by a trustee in a deed of trust is knocked down to the highest bidder, the sale may be enforced in equity in a suit for a specific performance, or the bidder may be held liable at law for the damages sustained.

2. *Mortgage — Trustee's Sale.* — When the purchaser to whom the property is struck off at a trustee's sale at auction fails to complete his purchase, the property must be re-advertised for sale—Barnard v. Duncan, *ante* 170.

*Appeal from Jefferson Circuit Court.*

*Abner Green* and *Cline & Jamison*, for appellants.

I. The re-sale of the property by the trustee, upon the failure of O'Fallon to pay the amount of his bid at the first sale, was in conformity with the power vested in trustee, and with the universal practice where a power of sale is given either by a grantor to a trustee or mortgagee, or by a court to any of its officers—Stewart v. Garvin, 33 Mo. 105 ;

Vannerson v. Cord, 1 S. & M. Ch. 345–6 ; Bicknell v. Byrnes, 23 How. Pr. 486 ; Lacey v. Giboney, 36 Mo. 320.

. II. The agreement made by the Kennerlys with the trustee, that they would wait a few days for the amount bid by O'Fallon, was simply permission to the trustee, and being without consideration did not divest the trustee or the Kennerlys of any right as against O'Fallon, nor could the transaction create an assumption of the bid of O'Fallon as a liability to themselves personally. In fact and in law, the trustee Burgess stood in a relationship which constituted him the special agent of neither of the parties to the suit, but having duties to perform for both; it being his duty to sell the land, in case of a default of payment in any of the notes, to pay the amount due on the notes to the parties holding them, and to deliver the surplus, if any, to the grantor in the deed of trust. Hence no statement made to the trustee by the Kennerlys of a merely permissive character could derogate from the rights of the Kennerlys as against said property.

. III. But even allowing the assumption to be correct, that the Kennerlys did assume the amount bid by O'Fallon as a personal indebtedness to themselves, then it must also be assumed that the first sale was a valid one, out of which alone such indebtedness could have sprung ; and the plaintiffs have no ground for a revesting of the title in them, but simply an action at law in the name of the trustee against the Kennerlys for the surplus after satisfying the notes in their hands.

IV. The petition in this case—setting aside the allegations of fraud, of which there is no proof whatsoever, and no finding by the court—shows no ground for the relief asked for ; and the ground upon which relief is granted by the court below is not named in the petition.

V. Even had it been proved, as it was not, that the notes for payment of which the property was sold were delivered to the defendants as collateral security for antecedent debts,

yet if they were passed to the defendants before maturity without any notice of equities in favor of the plaintiff (even had such existed), then they are holders for a valuable consideration, and are unaffected by any equities between the original parties—Grant v. Kidwell, 30 Mo. 455; 3 Cush. 168; 16 Pet. 16–22; 20 How. 370; 14 Cal. 98.

VI. If the plaintiff has been injured by the failure of O'Fallon to take the property at the first sale at the price bid, his remedy is against O'Fallon to recover from him the amount of his bid in excess of what the property sold for at the last sale.—Gardner v. Armstrong, 31 Mo. 535.

VII. All the parties immediately interested in this suit were not before the court, viz., the holders of the unpaid notes, and hence the court could not proceed to make a decree unless all the parties were properly before the court, or some reason shown why they could not be. And this want of parties affords good ground for reversal; and especially should the trustee in whom was vested the legal trust under the deed of trust have been made a party—2 Sto. Eq. Jur. § 1526; Sto. Eq. Pl. §§ 72, 75, 77.

*J. A. Beal*, for respondent.

I. The agreements between O'Fallon and Kennerly, for O'Fallon to refrain from bidding at the sale, renders the sale null and void and fraudulent—1 Sto. Eq. §§ 293, 322.

II. Collusion or contrivance to enable the purchaser at a judicial sale to obtain land at less than its real value, is cause for setting the sale aside—Neal v. Stone, 20 Mo. 294; Stewart v. Nelson, 25 Mo. 309.

III. So when it was agreed at an auction sale in partition that one party should desist from bidding, and that the other should purchase the land and divide it, the sale was set aside —Worten v. Hinkle, 20 Mo. 290; Hook v. Turner, 22 Mo. 333.

IV. If all the acts of a *cestui que trust* show a fraud on the debtor, the deed will be set aside—Stine v. Wilkerson, 10 Mo. 75; 35 Mo. 90.

V. The deed under the second sale cannot stand in consequence of the combinations between Kennerly and O'Fallon for O'Fallon to refrain from bidding at the sale. Nor can the first sale to O'Fallon be in the way of recovery in this suit, for the reason that O'Fallon refused to accept a deed under the sale, and disclaims any right under that sale. And as he does not set up a claim to the land under any circumstances, the only question for this court to make is whether the sale by the trustee on the 9th of May to defendants was a proper sale, and conducted without any fraud or combinations. We think that the fact of the defendants agreeing with O'Fallon to wait on him and give him time for payment of the amount bid at the first sale, makes it an individual indebtedness of O'Fallon to Kennerly, and that the power of the trustee to sell again was exhausted.

The entry of defendants on the land under the second sale gives them no title; besides, they had received at the date of the trial rents enough to pay all the indebtedness due Kennerly and O'Fallon, except about ninety dollars; and since then they have remained in possession of the farm for one year, which is proven to be worth one hundred and fifty dollars per year : so at the present time the indebtedness of Dover is overpaid.

The title under which defendants entered into the farm being fraudulent, null and void, they must account to plaintiff for the rents which overpay them.

HOLMES, Judge, delivered the opinion of the court.

This was a petition in equity by the grantor in a deed of trust on real estate made to secure the payment of six negotiable promissory notes, and it was brought against the defendants Kennerly & Co., holders of two of the notes and purchasers at a sale under a deed of trust, praying to have the trustee's deed to them set aside and annulled for the reason that one sale had already been made under a previous notice, and on the ground of fraud in making a second sale. The notes were drawn payable to John O'Fallon, Jr.,

and two of them had been paid, two of them assigned by him to the firm of Kennerly & Co.; and the other two to other persons not named; and O'Fallon was also made a party defendant.

It appears that when the notes held by the Kennerlys became due, they caused the property to be advertised for sale under the deed of trust, on the fifteenth day of March, 1861; that at the sale the plaintiff was present and bid the sum of $1,402, having previously made arrangements to get the money from other persons to pay the amount of his bid, but that John O'Fallon, Jr., bid one dollar more, and the property was struck off to him; that O'Fallon failed to pay his bid, not having the money ready, but thought he could make the payment on the next Thursday; that the Kennerlys, on being informed of this by the trustee, consented to wait; that some ten days afterwards, the money not having been paid, the trustee tendered a deed to O'Fallon and demanded payment of his bid, which he refused; and thereupon the Kennerlys directed another sale to be made upon a new notice, and the property was again advertised and sold on the sixth day of May following, after due publication of notice, when the Kennerlys became the purchasers for the sum of $530, and a deed was made to them by the trustee, conveying the land sold.

The petition alleges that there was a fraudulent combination between O'Fallon and the Kennerlys to prevent the plaintiff from becoming the purchaser, to deter others from bidding, and to enable the defendants to obtain the land at a reduced price, and that there was a secret agreement between them, whereby the Kennerlys were to become the purchasers for the benefit of O'Fallon, on being paid the amount of their debt. It was also alleged that a payment had been made in goods from a store to O'Fallon before the assignment of the notes to the Kennerlys, of which they had notice, and which had never been credited on the notes; and some other circumstances were charged as amounting to fraudulent conduct on the part of the defendants.

The defendants answered, denying any fraud, secret agreement, or fraudulent combination, or notice of any payment on the notes prior to the assignment; and they deny that any previous sale was actually made.

The proofs failed to show any actual fraud on the part of the defendants. There was no evidence whatever of any secret agreement or fraudulent combination between them prior to the actual sale, whereby any person was restrained or prevented from bidding. It was proved that after the second sale had taken place and the Kennerlys had become the purchasers, they agreed with the defendant O'Fallon that they would convey the land to him on being paid the amount of their debt; but this was never done. Nor did the evidence show any payment on the notes of which the endorsees had notice before the assignment of the notes to them.

The court below rendered a judgment for the plaintiff, finding that upon an account taken of the rents and profits of the land sold while in the possession of the purchasers, and deducting the same from the amount due them on the notes which they held, there was a balance due them of $94.36; and that the holders of the other two notes, as well as the amounts due thereon, were unknown to the court: and ordering, first, that the trustee's deed be and is hereby set aside and annulled; second, that the plaintiff deposit with the clerk of the court, on or before the first day of the next term of the court, the said sum of $94.36 in satisfaction of the balance due the Kennerlys; and, third, that if the plaintiff failed to pay the other notes to the holders thereof, on presentation, before the first day of the next term, "then this bill is to be dismissed."

We do not see any ground or principle on which such a decree as this can be sustained.

It is contended for the appellants that the debt of Kennerly & Co., in consequence of the consent given by them that the trustee might wait until the next Thursday for the payment by O'Fallon of the amount of his bid, became thereby the individual indebtedness of O'Fallon, and therefore

that they had no right to direct a re-sale of the property. There was no proof of any agreement beyond this in effect. Doubtless the bidder was bound by his bid. His contract might have been enforced against him in a court of equity, if the trustee had chosen to hold him to his bargain; or he might have been held liable at law for damages on a breach of the contract—Gardner v. Armstrong, 31 Mo. 535. But the trustee, in effect, elected to waive the bid; and on a refusal to accept a deed and pay the money, to declare it no sale. 'He might have rejected the bid on the spot unless paid at once, and then proceeded with the sale; or he might have struck off the property to the next highest bidder. He suffered the time to pass by, and there was simply no sale. There being no sale at that time, it was proper for the trustee to advertise the property again for sale on another day— Barnard v. Duncan, 38 Mo. 170.

The proceedings upon the re-sale appear to have been regular, and upon full notice. Nothing amounting to fraud, or a fraudulent agreement or combination, or any unfairness, is established by the evidence. The time may have been unpropitious, or the condition of the plaintiff unfortunate, and the property may have been sold for less than its value; but neither this nor the inability of the plaintiff to save himself, nor his neglect to attend the sale, can constitute a ground for the relief which he asks, in the absence of any satisfactory proof that the beneficiaries officiously or unfairly intermeddled with the duties of the trustee, or did anything to prevent other persons from bidding at the sale, or took any unfair advantage for the purpose of getting the property at a price below its value.

In Wooten v. Hinkle, 20 Mo. 290, and Neal v. Stone, 20 Mo. 294, which were cases of sales by the sheriff in partition, there was some evidence of an express agreement and a combination to prevent other persons from bidding, or of such management and contrivance on the part of those who were to reap the advantage of the sale as to prevent the attend-

ance of bidders, and hinder the bidding of those who were present. It may be conceded that, in the view of a court of equity, sales of this kind are to be put on the same footing as judicial sales, as it was intimated in Stine v. Wilkinson, 10 Mo. 94; but we have not found in this case any substantial grounds on which this court can undertake to set aside and annul this sale and deed. We think the judgment that was rendered below was not warranted by the facts of the case, and that it was entirely erroneous.

Judgment reversed and the cause remanded. The other judges concur.