## CURRY, Respondent, v. GREFFET, Appellant.

St. Louis Court of Appeals, December 12, 1905.

1. **TRUSTEE'S SALE: Executory Contract.** Where real estate is sold at a trustee's sale and knocked down to the highest and best bidder, a contract relation is thereby established between the trustee and the bidder which may be enforced by an action for specific performance, or which would sustain an action for damages for the breach.

2. ———: **Rescission: Earnest Money.** But where one contemplating a purchase of real estate at a trustee's sale was told by the trustee before the sale that he could pay a part of the money down and that he, the trustee, would furnish him the balance of the money, and the purchaser bid in the property, paying a sum for earnest money to the trustee, whereupon the trustee informed him that the whole purchase price had to be paid in cash that day and refused to loan him the balance, the purchaser had a right to disaffirm the contract on account of mutual mistake between the parties, and recover the earnest money paid, in an action against the trustee.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neil Ryan*, Judge.

AFFIRMED.

*W. H. Allen* for respondent.

(1) There being substantial evidence to support a judgment, the weight of the evidence cannot be reviewed on appeal. Everman v. Eggers, 106 Mo. App. 732, 80 S. W. 592; Crouch v. Colbert, 111 Mo. App. 93, 84 S. W. 992. (2) Where the purchaser at a trustee's sale fails to pay the purchase price, the trustee may sue in equity for specific performance; or he may elect to resell the property and sue for the damages sustained, the measure of the damages being the difference between the bid at the first sale, and the price realized at the second sale. Dover v. Kennerly, 38 Mo. 469; Gardner v. Armstrong, 31 Mo. 535. (3) If a trustee proclaims to those assembled that, unless the whole purchase price is paid by a certain hour of that day, he will return and resell the property, he may reappear at such hour and resell without further advertisement, in the event that the purchaser fails to so pay the purchase price. Bank v. Sternberg, 3 Mo. App. 568.

*Kinealy & Kinealy* for appellant.

The failure of the plaintiff to comply with the demand of the trustee made in accordance with his announcement by depositing $100 and completing the payment of the purchase money by two o'clock of the day of sale worked a forfeiture of the $80 paid on account of the $100 earnest money, and no part of that amount can be recovered by the plaintiff, even if no announcement of such intended forfeiture had been made. Before a recovery can be had on that executory contract the plaintiff must have fully performed it on his part or been prevented doing so by the defendant. Crews v. Gar-

neau, 14 Mo. App. 511. Which is just such a case as this
at bar.

STATEMENT.—The suit is for money had and re-
ceived. It was tried by the circuit court without a jury.
The facts developed by the evidence in behalf of plaintiff
were as follows: Plaintiff desiring to purchase a piece
of property which he saw advertised, called upon de-
fendant, a real estate agent, whom he had known for
eight or nine years, and consulted him in regard to his
contemplated purchase. Defendant advised him to have
nothing to do with the property mentioned, and further
advised him that he was then trustee in a certain deed
of trust covering a four-room brick cottage on Lea Place
which was to be sold on August 18th; that plaintiff
might purchase the same at the sale; that if he could
pay $100 thereon at the time of the purchase, he (de-
fendant) would arrange to let him have time on the
remaining portion of the purchase price or make him a
loan with which to pay the same. With this under-
standing, plaintiff looked at the property and on the
day of the sale, reported at the defendant's office and
was told by defendant to go to the court house, where
the sale was to be held; which he did about twelve
o'clock. When he reached there, defendant was selling
the property as trustee. Defendant said: "Here is a
piece of property located at 4134 Lea Place. It is to
be sold for cash. There is a deed of trust on it for $850
and I will guarantee the title perfect." It was also an-
nounced by defendant that $100 should be paid on
knocking down the property and if the balance was not
paid by two o'clock, the property would be re-sold.
Plaintiff bid $925 and it was knocked down to him. He
paid defendant, the trustee, $80 and offered to go to the
bank to procure the remaining $20. The trustee de-
clined to accompany him but wrote out and handed the
plaintiff an earnest money receipt for $80 and said to
Mr. Thompson, an attorney who attended the sale rep-

resenting the holders of the note and deed of trust: "Mr. Curry came to fix it with you for the balance of the money." Mr. Thompson said: "The balance must be coming in two hours or the property will be sold at two o'clock." Plaintiff then called attention to the fact that the defendant had agreed to make him a loan on the property or arrange for letting him have it by the payment of $100 down, with time for the balance of the purchase price. Defendant replied: "It is out of my hands now; I have nothing more to do with it." Plaintiff was therefore unable to take the property and the sale to him was never consummated. He forthwith demanded the return of his $80, which the trustee declined to do.

Upon this state of facts, the defendant requested the court to declare as a matter of law that the plaintiff could not recover. This the court refused. No other instructions were asked or given. The court found the issues and entered judgment for the plaintiff. Defendant appealed and contends that inasmuch as the payment of the amount mentioned was made as earnest money on an executory contract, which plaintiff failed and refused to fulfill on his part, the court erred in refusing such instruction.

NORTONI, J. (after stating the facts).—The familiar rule of law no doubt is that "if two persons enter into an executory contract and one of them pays earnest money on the agreed consideration and afterwards fails and refuses to fulfill the contract on his part, he cannot recover back the earnest money paid." [Crews v. Garneu, 14 Mo. App. 511.] It is likewise true that where the proposed purchaser of property being sold at a trustee's sale, makes the highest and best bid, and such bid is accepted by the trustee and the property is knocked down to him in accordance therewith, that thereby a contract relation is established between the parties which renders such bidder liable as purchaser,

and in event of his failure or refusal to comply with the terms of the sale, and his bid, which constitutes the contract between the parties, he may be proceeded against on the contract for specific performance in a court of equity if the trustee desires to hold him to the bargain. [Dover v. Kennerly, 38 Mo. 469.] Or the trustee may proceed at law for damages on the breach of the contract. [Gardiner v. Armstrong, 31 Mo. 535.] In each of these cases, however, a state of fair dealing, also a contract whereby the minds of the parties meet upon the subject-matter and terms of sale is assumed to exist. The facts in this record do not bring the case within the application of those principles. We are of opinion that the doctrine pertaining to mutual mistake of the parties applies with great force to the facts here in decision. It is a fundamental rule of law that there can be no contract without a concurrence of the minds of the contracting parties by which their mutual assent is given to some particular thing. This assent must be entire and adequate, comprehending unconditionally the whole, and not merely a part, of the proposition suggested as a basis of the contract. [1 Parsons on Contracts, 476-477; 1Wharton on Contracts, sec. 4.]

In the case at bar, it is palpable that there was a want of that essential meeting of the minds of the parties on the terms of the sale. It is shown that the appellant trustee dissuaded the respondent from purchasing other property and induced him to be present at the sale and bid thereat under an arrangement whereby he was to pay $100, and time or a loan was to be given for the remainder of the purchase price. Upon this understanding, the respondent investigated the property, called at appellant's office on the date of the sale, and while there was not informed that the proposed terms could not be carried out, but, on the contrary, was directed by appellant to go to the court house where the sale was to be had, presumably, of course, upon the same terms as theretofore agreed upon. This he did in due

time.  Upon reaching the court house, the sale was pro-
gressing, and it is true he heard appellant announce
that the terms would be cash and $100 to be paid on
knocking down the property.   This $100 requirement
seemed to coincide with his prior understanding.  He
made his bid, expecting the trustee to provide the re-
mainder of the cash for him on the property, and treat-
ing the matter, of course, as a cash purchase, the cash
to be furnished by the trustee, in accordance with his
prior agreement.  The evidence further shows that the
trustee so understood the matter for he applied to Mr.
Thompson immediately upon accepting and receipting
for the payment, as follows:  "Mr. Curry came to fix it
with you for the balance of the money," and that Mr.
Thompson replied:  "The balance must be coming in
two hours or the property will be sold at two o'clock,"
and then for the first time, the trustee refused to carry
out the terms of the sale which he himself had proposed,
or to make the loan as provided.  Immediately there-
upon, respondent disaffirmed the contract, as he had a
right to do, for it is well-settled law that a mutual mis-
take in regard to a material matter connected with the
subject-matter of the contract is a good ground for re-
scission by either party, and this applies with full force
when such mutual mistake relates to the price to be paid
or the terms on which the price or payment is to be
made.   [24 Am. and Eng. Ency. Law (2 Ed.), 1102;
Revegno v. Deffarari, 40 Calif. 459; Wilkinson v. Wil-
liams, 76 Ala. 163; Rupley v. Daggett, 74 Ill. 351; Phil-
lips v. Birtolli, 2 D. & C. 511.]

It seems to us that the better way to state the doc-
trine applicable here is, that either party can affirm
that there is no contract inasmuch as there was no meet-
ing of the minds upon one of the essential elements
thereof, for to say that the contract can be disaffirmed
by either party on the ground of mutual mistake, as-
sumes that there was a contract in the case, where the

115 app—24

evidence shows there was none.  In order to have a disaffirmance of a contract, the contract upon which the disaffirmance is to operate must exist, and if there be mutual mistake between the parties in attempting to create the contract, then there is no contract, for it is well settled that there can be no contract unless there is present the *aggregatio mentium* always essential thereto.  When this agreement of the minds is wanting, there is no contract to disaffirm.  And that, in our opinion is the case here, for the respondent had in mind and made his bid contemplating a purchase whereby, upon payment of $100 down, he was to be furnished a loan by the trustee on the property for the remaining portion of the purchase price wherewith he could meet the terms of sale proposed at the auction, and the trustee had then in mind, not the contract he had theretofore proposed to respondent, but one involving different terms by requiring the payment of cash furnished by the bidder, without the loan.

In an English case, Phillips v. Bistolle, 2 B. & C. 511, the defendant was a foreigner who had been in the habit of attending plaintiff's sales and purchasing. He did not fully understand the English language. There was knocked down to him as the highest bidder, certain earrings at the price of eighty-eight guineas. He accepted them without objection.  After they had been in his hands about three or four minutes, the person who interpreted for him, said to the plaintiff that the defendant had bid for the lot in question under the mistaken idea that the price at which it was knocked down was forty-eight guineas.  Plaintiff said the last bid had been mentioned three times.  Defendant then returned the earrings, plaintiff refusing to take them back, but said he would keep them on defendant's account.  In a suit on the contract for the price, the lord chief justice referred it to the jury to find whether the defendant was mistaken in the price at the time when he bid eighty-eight guineas, the theory clearly being that if there was

such mistake, then there was no contract of purchase. [See also Revegno v. Deffarari, 40 Calif. 549.]

So we are of opinion in this case that it was a question of fact for the trial court as to whether or not the bid and consequent payment of $80 by respondent was the result of mistake, induced by appellant in failing to inform him that he could not carry out his prior proposal as to terms, and the statement made at the sale that the terms were cash was not sufficient to inform respondent that the trustee would not furnish the cash as agreed. The learned trial judge having heard the evidence pro and con on this question, found the issues for the respondent, and there being substantial evidence to support the finding, we are not permitted nor are we inclined to interfere therewith. Upon the evidence adduced and in view of the finding of the trial court, the alleged contract appears here as one permeated with mistake, and in that posture there was no contract of purchase, for the reason that the minds of the parties failed to meet upon the terms of purchase, and appellant cannot be permitted to retain the moneys paid by asserting a contract, which was clearly not contemplated by the purchaser. It is obvious that respondent would not have made the bid of $925 when he had only $80 or $100 to pay thereon, unless he had relied upon the promise of the appellant to furnish the additional money. We are of the opinion that the evidence clearly shows a case of mutual mistake, brought about by the conduct of the trustee himself in inviting the respondent to be present and bid on the terms suggested, and permitting him to bid without informing the bidder that he would be unable to carry out his promise.

Entertaining these views, the ruling of the learned trial judge will be affirmed. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.