THOMAS A. GREENLEAF ET AL., Appellants, v. FRANK P. GREENLEAF ET AL.—58 S. W. (2d) 448.

Division One, March 16, 1933.

*Hollingsworth & Hollingsworth* and *T. L. Montgomery* for appellants.

404

*Charles Hiller, A. D. Campbell* and *John Campbell* for respondents.

FERGUSON, C.—This suit involves title to real estate. B. P. Greenleaf died, testate, April 7, 1895. At the time of his death he was the owner, in fee of 103¾ acres of land in Clark County which comprised his entire real estate holdings. His wife, Caroline, survived him and his heirs at law were his children, Frank P., Thomas A., Levi M., William H., and one grandchild, Emma Weaver, the only child and heir at law of testator's deceased and only daughter Mary Scott Weaver. At the date of the execution of the will, April 7, 1895, and at the date of testator's death, April 25, 1895, when the will took effect, each of testator's three sons, Frank P., Levi M.. and William II., had children living. No child was born to the marriage of the son, Thomas A. Following her grandfather's death Emma Weaver married W. W. Bridgman. No child was born of this marriage.

By his will testator bequeathed all his personal property to his wife, Caroline; bequeathed the sum of $50 to his son Thomas A. Greenleaf; and stated, "my granddaughter, Emma Weaver, child of my deceased daughter, Mary Scott Weaver shall not have any interest in my estate because of her being in a position to be well cared for by

her father and not on account of any ill will I bear said child or disfavor toward her on my part." By the fourth paragraph of the will, the validity of which is questioned in this suit, testator attempted to dispose of all his real property, the 103¾ acres of land above mentioned. Said devise is as follows:

"I give and bequeath to my said wife Caroline during her natural life, or so long as she remains my widow, the following described real estate situate in Clark County, Missouri;" (the land is here described) "and after the death or remarriage of my said wife it is my will that my three sons, Frank P. Greenleaf, Levi M. Greenleaf and Wm. H. Greenleaf shall each be entitled to an undivided one-third interest in the rents, issues and profits of said land during their natural lives . . . and in case of the death of either of said sons before the others then the heirs of the one so dying shall receive his share of the rents and finally after the death of the last survivor the title to said premises shall vest in the legal heirs of my said three sons named."

The will was duly admitted to probate May 24, 1895. Testator's widow, Caroline, died in 1924.

Thomas A. Greenleaf and Emma Bridgman each claiming to be the owner of an undivided one-fifth interest in the land as heirs of B. P. Greenleaf brought this suit in October, 1926, alleging in their petition that the devise of land made in the will was void both under the rule against perpetuities and as attempting a limitation of a legal estate which the law does not permit. The prayer of the petition is that the said devise be adjudged void; that the interests of the parties, plaintiff and defendant, in said real estate be determined and adjudged and that said real estate be partitioned. Frank P. Greenleaf, his children and grandchildren, William H. Greenleaf and his children, there being no grandchildren, and Levi M. Greenleaf having died in 1897, his children and grandchildren, were made parties defendant. The joint answer of the adult defendants admits "that the will of said deceased is correctly set forth in plaintiffs' petition," asserts the validity of the devise of land made in paragraph 4 thereof and prays the court "to ascertain and determine" and "by its judgment define the respective rights, interests and titles of the parties." The answer of the minor defendants, by their guardian *ad litem,* is a general denial. Upon a trial of the cause in the Circuit Court of Clark County the finding and decree of the court was for defendants. By its decree the trial court found: "that neither of the plaintiffs own any right, title or interest in the lands in said petition described; that the will of the deceased, B. P. Greenleaf, is valid and binding on all the parties hereto and that said lands described in the fourth paragraph of said will passes to and vested in the devisees therein named." It is then adjudged: "that said will of said deceased" and "clause four" thereof "be in all things confirmed;" that plain-

tiffs do ''not own any right, title or interest in the lands therein described'' and that plaintiffs' petition be dismissed. From such judgment and decree of the trial court plaintiffs bring this appeal.

Before passing to the merits we are compelled to digress and pass upon two separate motions to dismiss the appeal which respondents present. Respondents' brief touches upon the merits in only a cursory way and is devoted for the most part to suggestions and argument in support of these motions to dismiss. The ground of the first motion is that at the time this appeal was granted the circuit court did not have ''power or jurisdiction to grant an appeal in said cause.'' We find that this motion and the suggestions in support thereof, as same are set out in respondents' brief, to be identical with a motion to dismiss and suggestions supporting same, filed by respondents in this court on June 8, 1931. Appellants' suggestions in opposition were filed June 11, 1931, and on June 31, 1931, this court passed upon the motion, overruling same. By our action at that time the motion was disposed of and is not for consideration now. The other motion to dismiss the appeal was filed August 31, 1932. The ground of this motion is, ''that appellants' brief does not contain a fair and concise statement of the facts of the case as required by Rule 15 of this court.'' As the statement of facts set out in appellants' brief substantially complies with the requirements of our rule the motion to dismiss will be overruled. Respondents next say that the bill of exceptions filed herein does not show that appellants offered the will in evidence and therefore the will is not now before us for examination. It will be noted that the answer of the adult defendants expressly admitted ''that the will of said deceased is correctly set forth in plaintiffs' petition.'' Further the bill of exceptions sufficiently shows that the will was offered in evidence by appellants, admitted into evidence without objection and preserved as a part of the evidence in the case.

Appellants assign as error the finding of the trial court that the devise of land made in the fourth paragraph of the will was valid and that therefore plaintiffs have no interest in the land as heirs of B. P. Greenleaf, deceased. Appellants' first line of attack is that by the express terms of said paragraph four the ''vesting of the title to said real estate is postponed for such a length of time'' as to make the devise void under the rule against perpetuities. ''That rule is that the legal or equitable fee in the estate must vest within a life or lives in being and twenty-one years and the period of gestation thereafter from the date the instrument takes effect.'' [Melvin v. Hoffman, 290 Mo. 464, 235 S. W. 107.] Thus an estate so devised that the fee must necessarily vest within the time prescribed by the rule is valid. ''There is generally no restriction on the number of lives in being which may be selected as the measure'' of that portion or period of the time to which, for reasons well stated and demon-

strated by the authorities and textwriters, twenty-one years, and the period of gestation, are added. [21 R. C. L. p. 292; 3 Thompson on Real Property, p. 725; "The Rule against Perpetuities," Gray (3 Ed.) secs. 170, 189, 190, 216.] "The reason for this freeedom of choice in the selection of numerous lives in being is that, like numerous candles all burning at one time, the life of the person who may live the longest is but a single life. The only limitation is that the lives in being must not be so numerous that there is not some reasonable way of proving the decease of the survivor of them." [21 R. C. L. p. 292.] It seems reasonably clear that by paragraph 4 the testator intended to and did devise: ■ (1) A life estate to his wife Caroline. An estate thus given to a woman during widowhood places it in the category of estates for life. [21 C. J. 938, p. 59.] ■ (2) Upon the termination of the life estate given to the widow a life estate continuing during the "natural lives" of testator's three sons, Frank P., Levi M., and Wm. H., and terminating with death of the "last survivor" of the three was devised. The provision that the three sons "shall each be entitled to an undivided one-third interest in the rents, issues and profits of said land during their natural lives and in case of the death of either of said sons before the others then the heirs of the one so dying shall receive his share of the rents and finally after the death of the last survivor the title to said premises shall vest in the legal heirs of my said three sons named," was in effect and constituted a devise of the property itself for a period measured by a life in being and therefore a life estate. ■ The use of the term life estate is not necessary to create such an estate. The intention to create a life estate may be expressed in any equivalent and appropriate language. [Cross v. Hock, 149, Mo. 325, 50 S. W. 786.] Here we have what is denominated in Thompson on Real Property (Vol. 1, page 820) as a cumulative estate which does not terminate until all the persons named are dead. Each of the three sons is a beneficiary in the life estate to the extent of an "undivided one-third interest in the rents, issues and profits of said land." Upon the death of one of the sons, the life estate still being in existence, the share of the rents and profits to which that son was entitled becomes payable to his "heirs" and likewise upon the death of a second son, but upon the death of the last and, surviving son of the three, according to the terms of the will, the fee vests "in the legal heirs" of the three sons. As each of these three sons was living at the time of the execution of the will and had living children it is apparent that by the terms "heirs" and "legal heirs" the testator referred to his sons' descendants. The parties hereto have placed such construction upon those terms. It will here be noted, and later referred to, that no attempt is made to give the "heirs" of the sons dying before the termination of the life estate a successive estate for their lives but they merely succeed respectively to the benefits allotted to such

sons of the testator in the life estate created for the duration of the life of the last survivor of testator's three sons named.

When the will took effect the widow and the three sons, Frank P., Levi M., and Wm. H., were all in being. And according to the literal and express language of the will; "and finally after the death of the last survivor the title to said premises shall vest in the legal heirs of my said three sons named;" immediately upon the death of the survivor of these the remainder in fee vested in the "legal heirs of the three sons named." Thus the fee necessarily vests within the period prescribed by the rule against perpetuities. We understand respondents' memoranda brief to suggest that the devise is so framed that immediately upon the death of the testator the remainder in fee vested in interest in such of the class designated as remaindermen then in being, the class opening to admit any other person or persons subsequently coming within the designated class, and thus merely the right of enjoyment was postponed until the happening of the contingent event, i. e., the death of the survivor of the three sons (citing Gates v. Seibert, 157 Mo. 254, 57 S. W. 1065; 21 R. C. L. 290), and that the remainder in fee being so vested is not subject to the rule against perpetuities. While it is well settled that the rule against perpetuities does not apply to vested remainders nevertheless a remainder such as we have here, though it may be called vested, is not excluded from the rule. Those constituting the designated class and taking the remainder in fee cannot be finally determined until the death of the last survivor of testator's three sons. [See, The Rule against Perpetuities, Gray (3 Ed.) secs. 205a, 205b, and 972 note.] However from any viewpoint the devise does not violate the rule against perpetuities.

But appellants argue that granting the devise in question does not offend against the rule relating to perpetuities that nevertheless another, separate and distinct rule of law, which is independent of the rule against perpetuities, applies and operates to make the devise void. Appellants' statement and construction of this so-called rule is that if, by any possibility, under the terms of the will, the future estate devised could vest in the unborn child of a person unborn at the time the will took effect such devise is void. Disregarding the facts of this particular case but taking the will here involved appellants, by example, reason: Let the three sons named be designated A, B, and C. After testator's death a child D is born to A and a child E to B to each of whom a child is born, F and G respectively. No child is born to C. A and B die leaving C as the survivor of the three sons. D and E die leaving F and G, a grandchild respectively of A and B, each the unborn child of a person unborn at the time of testator's death, as the "legal heirs" who take title in fee upon the death of C. There seems to have been a doctrine debated in early times that to a certain extent remoteness of limitation was

prevented by means of a supposed rule that no future estate could be limited to the unborn child of an unborn person because such a limitation would be a possibility upon a possibility. Gray on Perpetuities discusses this early doctrine of a possibility upon a possibility and points out that it is without support in authority. Appellants cite as their leading authority and as the very corner stone of their argument, Whitby v. Mitchell, 44 Ch. D. 85, 42 Ch. D. 494. But that case does not announce such a rule as appellants here advance. The rule there announced may be said to be all that survives of the early debated doctrine of a possibility upon a possibilty and to have developed from that doctrine. There are three concurring opinions in Whitby v. Mitchell, 44 Ch. D. 85. LINDLEY, L. J. (see page 92), says: ''I do not know the exact meaning of the old rule as to a possibility upon a possibility. . . . I confess I do not understand it now and never did. But at all events it gave rise to the rule which everyone can understand . . . 'that, if land is limited to an unborn person during his life, a remainder cannot be limited so as to confer an estate by purchase on that person's issue.' '' Such is the rule announced in Whitby v. Mitchell, and it is there further declared to be a rule of law prior to and independent of the rule against perpetuities and to still exist. [See discussion in Gray on Perpetuities (3 Ed.) sec. 931.] Concerning this rule, prohibiting ''a limitation for the life of an unborn person with a limitation after his death to his unborn children to take as purchasers,'' it is said in 21 Ruling Case Law, at page 286: ''Although there is room for a difference of opinion on the subject, apparently this rule still exists, and it seems not to have been abrogated by the more modern rule against perpetuities.'' It is, however, unnecessary for us further to discuss the rule or whether it has been abrogated by the rule against perpetuities or is in fact but an instance of that rule; to do so would be, so far as this case is concerned, a discussion of a moot question. The rule has no application to the devise in question. As we have pointed out the two successive life estates, one to the widow and the other a life estate created for the duration of the life of the one of the three sons surviving his brothers, were limited to a life in being. No limitation is found in the devise of an estate for the life of a person unborn. The provision that the benefits in the life estate allotted to the two sons first dying should thereupon be given to their respective heirs did not create a new life estate for the lives of such heirs. They merely succeeded respectively to the share or interest which the two sons first dying had in a life estate which continued until the death of the last surviving son.

It appears that the trial court rightly determined the issues and its judgment and decree is therefore affirmed. *Sturgis* and *Hyde, CC.,* concur.

410

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All of the judges concur, except *Hays, J.*, not voting, because not a member of the court at the time cause was submitted.