**Fannie Snow ROOT et al., Respondents,**

**v.**

**Mildred MACKEY et al., Appellants.**

**No. 56255.**

Supreme Court of Missouri,
Division No. 1.

Nov. 13, 1972.

Ralph E. Smith, Butler, Attorney for respondents.

Norman E. Greene, Kansas City, Attorney for appellants; Warrick, Levine & Greene, Kansas City, of counsel.

LAURANCE M. HYDE, Special Commissioner.

Action to determine title to real estate. The trial court found title in fee simple vested in plaintiffs and the defendants have appealed. We have jurisdiction because title to real estate is involved and appeal in this case was taken prior to January 1, 1972. § 3, Art. V, Constitution of Missouri, 1945, V.A.M.S. We affirm.

The land involved, 280 acres in Bates County, was owned by H. P. Snow, who died in 1933. In 1927 he made a warranty deed to his two sons Sam H. Snow and J. Edgar Snow which stated:

"* * * Grant, Bargain and Sell, Convey and Confirm, unto the said parties of the second part, their heirs and assigns, the following described lots, tracts or parcels of land lying, being and situate in the County of Bates, and State of Missouri, to-wit: 280 acres, more or less. SE ¼ of Sec. 11, Tp. 41, R. 33 W and S ½ of the NE ¼ of Sec. 11, Tp. 41, R. 33 W, E ½ of SE ¼ of NW ¼, E ½ of NE ¼ of SW ¼ of Sec. 11, Tp. 41, R 33 W, I retain possession during my natural life and ½ net proceeds from rentals and otherwise after legitimate expenses. In case of oil, gas or minerals on this land, or any money obtained from Mineral leases all monies including

five hundred dollars per annum for each of them, shall be equally divided among living brothers and sisters and myself— including also themselves. This Mineral restriction lasts for a period of ten years from date hereof. This land shall not be sold or mortgaged for a period of ten years, and in case of the death of either or both, the share of such deceased shall revert to the living brothers and sisters."

■ Sam H. Snow died in 1934. J. Edgar Snow died in 1958 but he was adjudicated incompetent in 1943 and his daughter defendant Mildred Mackey was appointed his guardian. She collected the rents and profits of the land, kept 7/12 for her father and divided 5/12 among plaintiffs who were his brother and sisters. However, after her father's death all rents and profits were paid to plaintiffs by Mildred Mackey, who continued to manage this land until this controversy arose. One sister Marian Snow Griffin died before this action was commenced and is represented by the administrator of her estate. Defendants are the surviving children of J. Edgar Snow. The widow and children of Sam H. Snow, in 1939, made a quitclaim deed to the land to J. Edgar Snow and his brother and sisters.

Obviously this deed was not prepared by a lawyer. Such "do it yourself drafting" frequently makes judicial interpretation necessary and difficult. Defendants cite Knox College v. Jones Store Co., Mo.Sup., 406 S.W.2d 675, 679 for the rule of construction: " * * * the rule to be observed in the construction of deeds as well as wills is to ascertain the intention of the grantor from the whole of the instrument in question, allowing them to be effective 'in line with the intent of their faces as gathered from the everyday, good sense of their language.' " Although the deed uses words such as "Grant, Bargain and Sell," etc., courts "to give effect to the grantor's intention, * * * make it the paramount rule to read the whole instrument, and, if possible, give effect and meaning to all its language." Bean v. Kenmuir, 86 Mo. 666, 671; American Law Institute Restatement of Property § 108.

Plaintiffs claim Sam H. Snow, and J. Edgar Snow had only life estates and that defendants, children of J. Edgar Snow, have no interest.

Defendants claim a 7/12 interest in fee simple and contend that the last sentence of restrictions in the deed could be thus construed: "First, the phrase 'the share of such deceased shall revert to the living brothers and sisters' may refer to the ten year mineral interest. Second, this phrase may refer to the entire interest of either of the grantees, if *either or both* do not survive the ten year period." However, the deed required any money obtained from mineral leases to be divided equally among the grantor and all his children, "including five hundred dollars per annum for each of them." (Whether five hundred dollars was intended as a maximum for each of his children is not clear.) Moreover the grantor retained possession for his lifetime with one half of the net proceeds from rentals or other income outside of mineral lease money to belong to him. Defendants claim the provision that the land "shall not be sold or mortgaged for a period of ten years" meant that after ten years the two sons of the grantor should have the fee simple title. The deed does not say that and more important it does say in its final clause "in case of the death of either or both, the share of such deceased shall revert to the living brothers and sisters." This is not expressly limited to a ten-year period and as hereinafter shown would not have any effect if the conveyance to grantees was a fee simple grant.

"No particular words are required or are necessary to create a life estate. The use of the term 'life estate' is not necessary, but the intention to create a life estate may be expressed in any equivalent and appropriate language." 31 C.J.S. Estates § 32, page 56 citing Greenleaf v. Greenleaf, 332

Mo. 402, 58 S.W.2d 448, and Cross v. Hoch, 149 Mo. 325, 50 S.W. 786. In Cross, a will gave certain described land to the testator's daughter Sarah Cross and her heirs but provided: "the property here devised to Sarah Cross be subject to the trust, care, and control of my son Turner Maddox, for her use, and, should the said Sarah Cross die without children, then said property shall be divided among my other daughters." The court held this "a life estate for his daughter Sarah Cross, by necessary implication from the terms of the grant." (50 S.W. 1. c. 791.) It was considered that the testator was not a lawyer; that he "evidently used the term 'her heirs' as meaning her 'children.'" The court said it was not the law "that a life estate could only be created by the use of the express term 'life estate,'" but instead "[t]he same intention may be expressed in any appropriate equivalent words." See also American Law Institute Restatement of Property § 108 and Illustration 12, p. 347; 28 Am.Jur.2d 151, Estates § 61; Greenleaf v. Greenleaf, supra, 58 S.W.2d 1. c. 450.

■ The provision in the grantor's deed that the land shall not be sold or mortgaged for a period of ten years is relied on by defendants as showing a fee simple grant to J. Edgar Snow and Sam H. Snow was intended. However, a life estate is a freehold estate and can be sold or mortgaged. 31 C.J.S. Estates § 30, p. 52, §§ 50, 51, p. 105; 28 Am.Jur.2d 144, Estates § 56; 51 Am.Jur.2d 350, Life Tenants and Remaindermen § 99. Thus this restriction is not determinative of the estate conveyed. What is determinative is the restriction on the grantees' right to determine to whom the title goes on the deaths of the grantees, by specifically providing that upon the death of either grantee his living brothers and sisters take his share. This is similar to the provision construed in Cross v. Hoch, supra.

■ Defendants also claim the deed at least gave them a defeasible title for a period of ten years and title thereafter became absolute. They point out the use of the term "revert." They say since Sam Snow died within the ten-year period J. Edgar Snow got an addditional ½₂ interest and should be held to have possessed a ⅞₂ interest in fee; and each of plaintiffs ½₂. However, in Petty v. Griffith, Mo.Sup., 165 S.W.2d 412, 416, we held the grantor "did not use 'revert' in its technical sense"; instead we said: "To her it was a word of conveyance or her way of saying she intended the title to the property to go to Beal if he survived Belle Ford Griffith and then to his heirs." We held a life estate was conveyed to Belle Ford Griffith. Our view here, from the entire provisions of the deed, likewise, is that the grantor intended to create life estates in his two sons, the fee to go at the death of either to the living brothers and sisters. Thus at the death of H. P. Snow in 1933 his remainder interest went to his six brothers and sisters so that each got an equal share of his interest in the fee.

J. Edgar Snow conveyed his interest in the land to his two sisters Marian Snow Grissom and Sallie Snow Burnett by quitclaim deed dated October 30, 1935 (acknowledged November 26, 1935) which provided: "I am to retain possession during my natural life of ½ of the net proceeds from rentals and otherwise after legitimate expenses." This deed was not recorded until after the death of J. Edgar Snow. Defendants contend the court erred in ruling this deed was an effective conveyance. They say it was an attempt to make a testamentary disposition; that at the time of the execution of the deed J. Edgar Snow did not have a vested interest in the land; and that the deed was made within the ten year restriction on alienation.

■ Defendants also claim there was no valid delivery of this deed but it appears that at all times it was in the possession of J. Edgar Snow's sister, Sallie Snow Burnett, and that she told defendant Mildred Mackey about having it in 1943,

the year J. Edgar Snow was declared incompetent. Our view is that the evidence supports the court's finding of a valid delivery. As to the ten year limitation period, we hold that it had no effect on the conveyance of the fee interest in remainder that we find J. Edgar Snow had at the time of his conveyance after the death of his brother, Sam H. Snow, and that is all that is now involved. "The prevailing rule is to the effect that a restraint on alienation is void as being repugnant to the nature of an estate in fee, even though the restraint is limited as to time." 61 Am. Jur.2d 99, Perpetuities, Etc. § 103; 70 C.J. S. Perpetuities § 67, p. 667. We said in Clark v. Ferguson, 346 Mo. 933, 144 S.W. 2d 116, 118: "[T]he weight of authority and, we think the proper rule, is that such a devise [in that case in fee simple] will not be cut down by an attempted restraint on alienation even for a limited time." See also Hankins v. Mathews, Tenn.Sup., 425 S.W.2d 608; 36 A.L.R.2d 1437 annotation; 42 A.L.R.2d 1243 annotation; American Law Institute Restatement of Property § 406, p. 2393, Application—Restraints qualified only as to time, p. 2397, Illustration 2, p. 2398.

■ The most reasonable construction of this quitclaim deed seems to be that the intent of the grantor, J. Edgar Snow, was to retain possession of his life estate and convey to his two sisters his interest in the fee. Thus construed it was not an attempt to make a testamentary disposition or an attempt to convey an after acquired title. The trial court's judgment adjudged title on this basis. We, therefore, hold that the trial court correctly determined that defendants had no interest in the land involved.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.