Elmo **MICHIE** and Maxie Michie, his wife, Plaintiffs-Appellants,

v.

The **NATIONAL BANK OF CARUTH-ERSVILLE**, Defendant-Respondent.

No. 10475.

Missouri Court of Appeals,
Springfield District.

Sept. 13, 1977.

Motion for Rehearing or Transfer Denied Oct. 5, 1977.

Application to Transfer Denied Nov. 14, 1977.

---

James E. Reeves, Caruthersville, for plaintiffs-appellants.

John R. Fowlkes, Caruthersville, for defendant-respondent.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

FLANIGAN, Judge.

On June 24, 1974, plaintiffs Elmo Michie and Maxie Michie, husband and wife, were the successful bidders at a foreclosure sale conducted under a power of sale contained in a deed of trust held by The National Bank of Caruthersville, defendant. In their three-count petition plaintiffs sought "cancellation" of the foreclosure sale and restitution of their payment ($15,000).

The petition alleged that after the foreclosure sale plaintiffs learned for the first time that George E. Goff, the grantor (mortgagor) in the deed of trust, did not have a fee simple title but had only a life estate and that, by their purchase, plaintiffs acquired only the life estate and did not acquire a fee simple.

Count I alleged that the defendant warranted that Goff had fee simple title and that the defendant had breached that warranty. Count II alleged that the defendant "mistakenly represented" to plaintiffs that the successful bidder would acquire a fee simple and that plaintiffs relied on that representation to their detriment. Count III alleged that the sale was fraudulent; that the trustee, acting at the request of and on behalf of defendant, conducted the sale "unfairly and improperly" in that the trustee, knowing that he was empowered to convey only a life estate, failed to disclose the fact that Goff had only a life estate and

by his "silence and other conduct misled plaintiffs into believing that the trustee was empowered to convey a fee simple title to the successful bidder."

The trial court, sitting without a jury, found the issues, on all counts, in favor of the defendant. On this appeal plaintiffs claim that under "the undisputed evidence" they were entitled to prevail on each count.

Appellate review of this nonjury action is governed by Rule 73.01, V.A.M.R., as construed in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). The decree of the trial court must be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy,* 536 S.W.2d at p. 32. Neither side invoked Rule 73.01 to request findings of fact and the trial court made none. That being the situation, "all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01.

In the following summary of the facts "DeReign" is Morrell DeReign, Jr., an attorney and an abstracter; "Harper" is Delbert Harper, president of the defendant; "Elmo" is plaintiff Elmo Michie; "Duane" is Duane Michie, son of the plaintiffs—Duane is also the executive vice president of the Bank of Hayti; "Reeves" is James E. Reeves, attorney for plaintiffs.

On December 28, 1972, defendant made a loan to George E. Goff. The note evidencing the loan was secured by a deed of trust dated December 28, 1972, in which Goff and his wife were the mortgagors, the bank was mortgagee, and DeReign was the trustee. The deed of trust, which was recorded, contained the words "grant, bargain, and sell."

Plaintiffs assert, and defendant tacitly concedes, that Goff in fact did not have a fee simple title but had a lesser interest in

the mortgaged land, probably only a life estate.[1]

In conjunction with the making of the loan, DeReign examined an abstract of the title to the land and wrote a letter to the bank. The record refers to this letter as Exhibit A. It is dated December 28, 1972, and reads, in essence, as follows:

"[I] have examined an abstract of title covering the title to [the land here involved] from the government to date. Such examination discloses that on October 17, 1952, the circuit court of Pemiscot County, Missouri, in Case No. 10106 decreed that 'George E. Goff is the legal fee simple owner of [the land].' Said decree was affirmed by the Supreme Court of the State of Missouri in *Hutchison v. Goff*, 262 S.W.2d 851. I found no judgments or mechanic's liens against said Goff and the taxes for prior years have been paid."[2]

It should be noted that Exhibit A does not contain DeReign's opinion as to the type of interest which Goff held in the land.

DeReign testified that after he prepared Exhibit A he "hand carried it" to Harper. DeReign "disagreed with the supreme court decision" and told Harper that Goff had only a life estate, but that it was a "loanable risk" in view of Goff's age. At the time of the trial Harper did not recall that conversation but said, "I certainly do not deny it."

Goff defaulted in the payment of the secured note and DeReign, as trustee, published in a local newspaper a "notice of trustee's sale," the date of the first insertion being May 30, 1974. The notice recited that Goff and his wife "by their deed of trust dated December 28, 1972, conveyed to [DeReign] as trustee the following described real estate. . . ." The notice gave the book and page where the trust deed was recorded, contained the legal description of the land, stated that the note was in default and that the trustee, at the request of the holder of the note, would on June 24, 1974, "offer for sale and sell at public vendue for cash in hand all of the real estate described in said deed of trust . . ." and gave the time and place of sale.

Elmo testified that in early June 1974 he saw the foreclosure notice in the newspaper. Elmo then talked with DeReign. Elmo asked DeReign if he could get clear title to the land and said that he, Elmo, had "always heard you couldn't get a clear title." The only statement which DeReign made to Elmo was that he, DeReign, represented the bank and Elmo would have to see his own lawyer.

Elmo talked with his attorney Reeves who said that he would check into the situation and call him.

Elmo had a conversation with his son Duane, and Duane, at his request, "contacted DeReign to find out about the title." DeReign told Duane that he would not discuss the matter on the telephone but would talk to him in the office.

Duane went to DeReign's office and had a conversation with DeReign which lasted 30 or 40 minutes. The two men "went over" the abstract and DeReign told Duane

1. As a witness for defendant, DeReign testified that in his opinion Goff "had more than a life estate but less than a fee simple."

2. Exhibit A is in error in stating that the docket number of the circuit court action was 10106. The correct number was 16106. The parties to this appeal make no mention of this discrepancy.

    The decree in Case No. 16106 contains the language quoted in Exhibit A. It is also true that in *Hutchison v. Goff*, 262 S.W.2d 851 (Mo. 1953) the judgment was affirmed. However, the only issue before the supreme court was the construction of a deed in which the grantees were Laura Goff and her husband. The opinion of the supreme court contains no statement defining George E. Goff's interest in the land—whether a life estate, a fee simple, or something else. The claim in the instant appeal that George E. Goff had only a life estate is based on the language contained in the *will* of Laura Goff in which she devised to George E. Goff the residue of her estate "to have and to hold for his natural life, with power to dispose of the personal property, but the real estate shall descend to the bodily heirs of the said George E. Goff, my grandson, upon his death." The opinion of the supreme court dealt with the construction of the *deed* and not with the construction of the *will*, although the latter was quoted.

that he did not think Goff had a fee simple title. DeReign spent considerable time discussing the case of *Hutchison v. Goff* and explaining to Duane why he did not think Goff had a fee simple title. DeReign said he did not agree with the supreme court decision and thought a problem might develop in the future. DeReign said that a purchaser of the land "would be buying a lawsuit." He suggested that Duane consult an attorney. Duane, as a banker, was amazed that there was a mortgage on the land because all of his life Elmo had told Duane that Goff had only a life estate. DeReign told Duane, "If I were you I would not be interested in buying the property." DeReign "made it clear" to Duane that DeReign would not "pass" the title to the land and that DeReign "was spooked about the title."

Duane testified that he told Elmo that DeReign said not to buy the land. Elmo and Duane then went to Reeves and related to Reeves the conversation which Duane had had with DeReign. Apparently this took place *after* the conversations described in the next paragraph.

Reeves had a conversation with Harper.[3] When asked at the trial by plaintiffs' counsel if he had told Reeves that DeReign okayed the title, Harper's reply was "I don't know that I necessarily said that, Jim Ed, but I said I had a letter from DeReign." In the conversation being described, Harper read to Reeves the quoted portion of Exhibit A. Reeves asked Harper if he could have a copy and Harper told him he could. Harper then telephoned DeReign and asked DeReign about giving Reeves a copy of Exhibit A. DeReign told Harper not to "give out any information on the title." Harper then telephoned Reeves and told Reeves that DeReign had instructed him "not to pass out the information."

About the time that Reeves telephoned Harper, Duane also telephoned Harper and asked him if he had a title opinion on the land. Harper told Duane that he "just could not give him any information on it." Duane testified that Harper did not lead him to believe that Goff had a fee simple title.

On June 7, 1974, Reeves wrote Elmo a letter saying: "I have checked into the title of the 40 acres being sold by the bank and the title is alright." Although this letter was placed in evidence, Reeves himself did not testify and the record does not disclose the nature of the "check" which Reeves conducted.

Elmo said that he made up his mind to buy the land "when I got the letter from Reeves."

"Q You're stating then, if I understand you correctly, that even if your son, Duane Michie, did relate his conversation about the title with DeReign to you, that you ignored it and based your opinion upon what Mr. Reeves said, other than what Mr. DeReign might have said to your son, is that correct?

"A I was listening to Mr. Reeves."

On June 24, 1974, Elmo attended the foreclosure sale. At the sale DeReign read the notice of sale but did not make any statement concerning the title. Elmo made a successful bid of $15,000. On the day of the sale Elmo paid DeReign, as trustee, the amount of his bid and received from him a trustee's deed in which plaintiffs were the grantees. That deed contained recitals to the effect that Goff and his wife had conveyed the described land to the trustee. The trustee's deed was recorded on the day of the sale.

Some weeks after the sale plaintiffs made application to the Federal Land Bank of St. Louis for a loan. On August 6, 1974, the attorney for the Federal Land Bank refused to approve the making of the loan and stated that the title was defective in that Goff "had nothing more than a life estate at the time of the execution of the

---

**3.** Although there are some discrepancies in the evidence with regard to the contents of the various conversations summarized, there was general agreement on the essentials of the conversations. The record is not clear with respect to the sequence of the conversations. This court believes that all of the witnesses for both sides were truthful and that the discrepancies, such as they are, are due to fallible memories.

deed of trust and the subsequent foreclosure sale conveyed only his life estate to our applicants." This action was instituted in October 1974.

For the purpose of this opinion this court assumes that Goff's interest in the land was a life estate. Of course if Goff had a fee simple, plaintiffs' action fails because each count of the petition rests on the theory that Goff had only a life estate.

"A life estate is a freehold estate and can be sold or mortgaged." *Root v. Mackey,* 486 S.W.2d 449, 452 (Mo.1972). Because Goff had only a life estate, the deed of trust conveyed that interest, and no more, to the trustee. *Belue v. Fetner,* 251 S.C. 600, 164 S.E.2d 753, 755[4–6] (1968); *Guy v. Culberson,* 164 Tenn. 509, 51 S.W.2d 500, 501[2, 3] (1932); *Vandervort v. Finnell,* 96 Neb. 515, 148 N.W. 332 (1914). The trustee's deed to plaintiffs, in foreclosure of that deed of trust, could convey no more than the deed of trust conveyed. *Pruitt v. St. Johns Levee & Drainage Dist.,* 341 Mo. 120, 106 S.W.2d 467, 472[8] (1937).

"A purchaser at a mortgage foreclosure sale acquires all the title and interest of both the mortgagor and the mortgagee in and to the property. He succeeds to all the rights and interests of the mortgagor and mortgagee." Wiltsie on Mortgage Foreclosure, 5th Ed., Vol. II, § 778, p. 1261. "The sale, however, operates to transfer only that title or right which the mortgagor had in the property at the time of the execution of the mortgage. The purchaser takes that title only, and where the mortgagor had no interest in the property, the purchaser takes none. Where the mortgagor's interest is less than a fee in the whole estate, the purchaser takes that interest only. Where the mortgagor had a life estate only in the lands, the purchaser acquires such estate only, though he supposed that he was buying the whole title. Wiltsie, supra, § 778, p. 1265.

Many authorities support the principle that, in general, the doctrine of caveat emptor applies to foreclosure under a power of sale contained in a deed of trust, and

ordinarily neither the trustee nor the mortgagee is liable to the purchaser for a defect in the title. 59 C.J.S. Mortgages § 587 p. 999. Jones on Mortgages, 7th Ed., Vol. III, § 1899a p. 620; Thompson on Real Property (1957 Rep.), Vol. 10, § 5185, p. 261; 55 Am.Jur.2d Mortgages § 780, p. 694.

"While as a general rule the doctrine of caveat emptor applies to foreclosure sales, this rule is not an absolute one; there are many circumstances under which the purchaser, whether the mortgagee or a stranger, may be protected as a bona fide purchaser. . . . It [the doctrine of caveat emptor] does not apply where the purchaser, without negligence on his part, has been misled by material mistake or fraud, as where he can show that he was induced to make the purchase by fraudulent concealments or misrepresentations of the creditor, or persons making the sale, as to the condition of the title, and that he did not discover, and could not have discovered with due diligence, the true condition of the title until after the completion of the sale." 55 Am.Jur.2d Mortgages § 781, p. 695.

A purchaser at a foreclosure sale buys under the doctrine of caveat emptor, although this is a "limited caveat," and the purchaser is required to take notice of everything in the recorded chain of title. *Hrovat v. Bingham,* 341 S.W.2d 365, 369[3] (Mo.App.1960).

Missouri has long recognized that ordinarily the rule of caveat emptor applies to a foreclosure under a power of sale contained in a deed of trust. In *Barnard v. Duncan,* 38 Mo. 170 (1866) a trustee sued the defendant who was a successful bidder at a foreclosure sale and had refused to pay the amount of his bid. Defendant claimed that his nonpayment was justified because the deed tendered him did not contain a full warranty of the title and because the land was encumbered to a larger amount than he knew. The deed of trust which had been given to the trustee did contain covenants of warranty of title. The court held that the defendant had no right to demand from the trustee a deed which warranted the title.

"It was a sale by the trustee in his fiduciary capacity only. The trustee undertakes only for the execution of the power that is given him, and he is only authorized to sell and convey the title which is vested in him by the deed. He was not empowered to make a deed in the name of the grantors to him, nor to execute any covenants in their names. Nor can he be required to enter into any personal covenants for title or against encumbrances in general. The only covenant that can be demanded of a mere naked trustee, who has no interest in the property, beyond the bare legal title, in any case of this kind, is the usual trustee covenant against acts or encumbrances done or suffered by himself." *Barnard* 38 Mo. at p. 181.

The court, 38 Mo. at p. 183, said: "All purchasers are bound to know that there can be no warranty of the title on such sales, and, it is presumed, it is always so understood. The title is on record; the records are open to all, and the purchasers can examine the title for themselves. There being no warranty, the rule of *caveat emptor* must necessarily be applied in reference to the conveyance, except as to the ordinary trustee covenant which the vendor (sic) may require. We see no good reason why this covenant should not be required of this trustee. He could not well object to covenanting against acts or encumbrances done or suffered by himself. And if the purchaser had objected to the deed on this ground, there would have been no cause of action against him here. He absolutely refused to complete his purchase unless a deed with full general warranty of title were tendered. We think this amounted to a waiver of any demand for a covenant against the trustee's own acts merely, and of all objection to the deed that was tendered on that ground alone."

The court pointed out that the debt, secured by the deed of trust, had also been secured by other deeds of trust and that the land being sold was not the only land covered by the instant deed of trust. Thus the amount of the encumbrances actually existing on the land being sold would be greatly affected by the application of the proceeds of other property sold and the amount to be realized from other property not yet sold. Those matters, said the court, were things which for the most part could be known only to the trustee and could not be ascertained by an examination of the records in the recorder's office. They were matters "not equally open to both vendor and vendee."

38 Mo. at p. 186 the court said: "Where the facts, or means of information concerning the condition and value of the thing sold are equally accessible to both parties, and nothing is said or done which tends to impose on the other, or to mislead him, there is no fraud which the law can notice; but where material facts are accessible to the vendor only, and he knows them not to be within the reach of the diligent attention, observation and judgment of the other party, he is bound to disclose such facts, and to make them known to the purchaser. It is only where such attention on the part of the vendee might enable him to ascertain the facts, and protect himself against surprise, mistake or imposition, that the maxim *caveat emptor,* in this matter of fraud, ought to be applied to him. The vendor must disclose all material facts of which he knows the vendee to be ignorant. There may be fraud in suppressing and concealing material facts and circumstances, as well as in the misrepresentation, if the other party is knowingly suffered to deal under a delusion."

The court also said: "In other words, if the purchaser buys real estate and takes a deed without covenant of warranty, he takes the risk of the title on himself; he must examine the title for himself and so far the rule of *caveat emptor* may be said to apply to him. The misrepresentations or suppression of material facts are matters collateral to the written contract or deed and may be inquired into on the ground of fraud." *Barnard* 38 Mo. at p. 187.

Plaintiffs' first "point relied on" is that the trial court erred in finding in favor of the bank on Count I "because the undisputed evidence disclosed an express warranty

of title by the bank." This is so, say plaintiffs, because: (a) the deed of trust executed by Goff and his wife on December 28, 1972, contained the words "grant, bargain, and sell," and also stated that the trustee, upon foreclosure, "shall execute and deliver a deed in fee simple of the property sold to the purchaser . . ."; (b) the "notice of trustee's sale," first appearing in the newspaper on May 30, 1974, stated that the trustee would "sell at public vendue all of the real estate described in said deed of trust"; (c) the trustee's deed dated June 24, 1974, from DeReign as trustee to plaintiffs as grantees, contained, in the granting clause, "bargain, sell, and convey," and, in the habendum clause, contained "to have and to hold the same unto [plaintiffs], their heirs and assigns"; (d) Harper honestly believed the bank had a deed of trust on the fee simple title and so advised Reeves and Duane.

■ With respect to (a): It is true that, under § 442.420 the words "grant, bargain, and sell," contained in the deed of trust, constituted an express covenant that Goff was "seized of an indefeasible estate, in fee simple." See *Allaben v. Shelbourne,* 357 Mo. 1205, 212 S.W.2d 719, 720[1] (1948). It is also true that plaintiffs, as grantees in the trustee's deed, have, with respect to Goff, "all the protection which those covenants could have afforded . . . without any covenant of warranty from the trustee." *Barnard v. Duncan,* 38 Mo. 170, 182 (1866). See also *Graham v. Finnerty,* 232 S.W. 129, 132[5] (Mo.1921). But the covenants in the deed of trust were those of Goff and not those of the trustee or mortgagee.

By the deed of trust Goff covenanted that he had a fee simple and, had he had it, the trustee's deed, upon foreclosure, would have conveyed the fee simple to the purchaser. If Goff in fact did not have a fee simple the trustee's deed could not convey it. A reasonable construction of the language quoted from the deed of trust is that Goff covenanted that he had a fee simple and authorized the trustee to convey that title, if such it was, to the purchaser.

There was no testimony that plaintiffs or their advisers Duane and Reeves had knowledge, prior to the foreclosure sale, of the contents of the deed of trust. If it be argued that they had constructive knowledge of it because it was on record, the response to that argument is that the same public records showed that Goff had only a life estate and thus could not have mortgaged a fee simple even though the deed of trust purported to do so and contained an express covenant to that effect.

■ With respect to (b): § 443.320 RSMo 1969, V.A.M.S., referring to the contents of a notice of sale of real estate under a power of sale contained in a deed of trust, requires that the notice set forth "the date and book and page of the record of such mortgages or deeds of trust, the grantors, the time, terms and place of sale, and a description of the property to be sold."

Two eminent authorities on Missouri property law have said: "An instrument cannot be effective as a deed if it lacks the essential element of a *description of the land conveyed.* For both engineering and legal purposes *land is described by giving its boundaries.* This may be done directly by reference to fixed monuments, either natural or artificial; or indirectly by using the name, letter or number to a tract of land by a public or private survey." (Emphasis added) Possessory Estates, Future Interests and Conveyances in Missouri by Willard L. Eckhardt and Paul M. Peterson, 23 V.A.M.S. § 84, p. 72. See also *State v. Grimm,* 314 Mo. 242, 284 S.W. 490, 493[5–7] (banc 1926).

Plaintiffs have not directed the attention of this court to any authority holding that "a description of the property to be sold" means other than "giving its boundaries." More specifically plaintiffs have not cited any authority holding that "a description of the property to be sold" must include a statement with regard to the type of interest or estate held by its owner.

There have been instances where a bidder at a foreclosure sale has been relieved of his obligation to make payment where the no-

tice of sale contained a positive misstatement. In *Coons v. North,* 27 Mo. 73 (1858) the notice described the land as "a tract of 80 acres" and gave its metes and bounds. The court held that the purchaser was entitled to have the sale set aside on the ground of mistake when a subsequent survey disclosed that the land contained only 23 acres. Such is not the situation here. The instant notice was accurate in stating that the "trustee would sell at public vendue all of the real estate described in said deed of trust." To accord that language any meaning beyond the one that the trustee would sell the mortgagor's interest in the real estate described in the deed of trust would be placing upon it a construction inconsistent with the doctrine of caveat emptor. Plaintiffs have cited no authority justifying such a construction.

This is not to say that it would not have been better if the notice of sale had volunteered the information that Goff's interest was only a life estate. Even if the notice did not so state, an announcement to that effect could have been made at the sale itself. On the other hand if such information had been stated, and Goff in fact had something less than a life estate, obvious difficulties would have been presented.

There is authority that if the notice of sale attempts to describe the state of the title to the property, the description must be "exact and accurate." 59 C.J.S. Mortgages § 565f p. 936. There is also authority that a foreclosure under a power of sale will be set aside where the mortgagor had *no* title or interest and the mortgagee with knowledge of that fact advertised the land for sale under the mortgage. *Dirks Trust & Title Co. v. Koch,* 32 S.D. 551, 143 N.W. 952 (1913).

Some authorities hold that, in the foreclosure of a second mortgage, the notice need not mention the existence of the prior mortgage, *Scroggins v. Harper,* 138 Ga.App. 783, 227 S.E.2d 513, 515[2] (1976) (although stating it would have been the better practice to do so), *Flax v. Mutual Building & Loan Association,* 198 Mich. 676, 165 N.W. 835[4, 5] (1917); *Myers v. Carr,* 173 Okl. 335, 47 P.2d 156, 161[5, 6] (1935). As expressed in *Barnard,* supra, "the title is on record; the records are open to all, and the purchasers can examine the title for themselves."

It should be noted that plaintiffs did not rely upon the contents of the notice as evidencing the nature of Goff's title, for Elmo's investigation of the title, through the conversations with DeReign and Harper, took place after Elmo saw the notice. Any misconception arising from the notice, and this court finds that none properly could have arisen, should have been dispelled by the detailed information given by DeReign to Duane concerning the nature of Goff's title, which information was relayed by Duane to Elmo and Reeves. Moreover, if the trustee's deed, as discussed in (c), contained no warranty of a fee simple title, plaintiffs may not, absent fraud or mistake, look to the notice because the respective rights of the parties were merged in the trustee's deed which was delivered to and accepted by plaintiffs. *Barger v. Healy,* 276 Mo. 145, 207 S.W. 499 (banc 1918).

■ With respect to (c): The trustee's deed does contain, as stated by plaintiffs, the language "I, the undersigned trustee, . . . do bargain, sell and convey unto [plaintiffs] [the described real estate] to have and to hold the same unto the said [plaintiffs], their heirs and assigns." The words required by § 442.420 RSMo 1969, V.A.M.S. to import an express covenant of a fee simple title are "grant, bargain, and sell." The instant words "bargain, sell, and convey" do not import such a covenant.[4]

---

4. "Presumably if any (only?) two of the three chief words in [§ 442.240] should be used, while the instrument would be effective as a conveyance, the grantor would not be bound by any statutory covenants. It has been so held in other states which have similar statutes. *See Wheeler v. County of Wayne* (1890) 132 Ill. 599, 24 N.E. 625; *Gee v. Pharr* (1843) 5 Ala. 586." Simonton, Statutory Covenants for Title in Missouri, 28 U. of Mo.Bull.L.Ser. 3, 11. "One who knows the law can easily avoid the effect of the statute, either by using appropriate 'restraining words' or by refraining from the use of the complete magic formula." Ibid. p. 17.

Gill on Missouri Titles (4th Ed.), Vol. I, § 197, p. 174; 21 C.J.S. Covenants § 10 p. 890.

■ Plaintiffs contend that the language of the habendum clause imports a warranty of a fee simple title. Section 442.460 V.A. M.S. provides: "The term 'heirs' or other words of inheritance, shall not be necessary to create or convey an estate in fee simple, and every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear, or be necessarily implied in the terms of the grant." Thus the language of the trustee's deed would have been sufficient, as a *conveyance*[5] to pass a fee simple title if Goff had held such and this would be true under the statute even if the word "heirs" had not been used. But plaintiffs' argument that the use of the word "heirs" imports an express *warranty* of a fee simple title is unsupported by citation, statutory or otherwise. That argument is rejected.

■ With respect to (d): This prong of defendant's first point is premised on an erroneous factual assumption. Harper did not tell Reeves that the bank had a deed of trust on the fee simple title. What Harper did tell Reeves has been set forth. Reeves himself did not testify.

With respect to what Harper told Duane, as previously stated, Duane said that Harper "on his own" did not lead him to believe that Goff had a good fee simple title; Harper merely quoted what DeReign had said. Of course Duane also talked to DeReign and knew that DeReign's opinion was that Goff did not have a fee simple. It was Harper's testimony that he told Duane that "I just could not give him any information." The trial court was justified in believing the latter testimony.

It is true that Harper testified that he believed, at the time of the foreclosure, that the bank had a deed of trust on the fee simple. However, he also said that he did not recall, but did not deny, that DeReign had told him otherwise at the time of the delivery of Exhibit A in 1972. On the issue of whether the bank made an express warranty of title, which is plaintiffs' contention in their first point, Harper's knowledge or ignorance of the nature of Goff's title would not be controlling. If there was an express warranty, Harper's knowledge that Goff had only a life estate would not, standing alone, extinguish it. If there was no express warranty, Harper's misconception that Goff had a fee simple would not, standing alone, create it. See 21 C.J.S. Covenants § 38 p. 908.

■ Plaintiffs argue that "It has long been the law that a sale of personal property implies a title on the part of the seller," and say that this doctrine should be applied to real estate sales.[6] This contention is not lacking in appeal but it should be addressed to the legislature. The author of the article cited in footnote 4 says, at p. 17, that it is a matter of policy whether "one who sells and conveys real property ought to be held to warrant the title as in the case of sales of personal property. There seems to be no good reason why a man should be permitted to represent that he owns land by purporting to convey fee simple title thereto, and escape liability merely because he has not expressly convenanted that he has good title. Historically, this has not been the law as to real property but originally there was no implied warranty of title on sale of personalty. As to personalty the law was gradually changed by judicial decision and perhaps a like change would have taken place in real property law, were it not for the reluctance of courts to change the law as to realty by judicial decision. A proper legislative change is therefore to be commended, but such law ought to be made to apply to all conveyances of real property

---

5. "A conveyance . . . is . . . good without a warranty or personal covenants. Covenants in a deed are not part of the conveyance, but are separate contracts, and title passes independently of them." 26 C.J.S. Deeds § 22e p. 628.

6. "Real estate transactions, except for fixtures in relation to secured transactions, are not covered by the [Uniform Commercial] Code." 15A Am.Jur.2d Commercial Code § 2, p. 457.

for a valuable consideration, and ought not to be limited to conveyances in fee simple which contain the words, 'grant, bargain and sell.' Such a statute has long existed in England."[7] See *Dickson v. Desire's Adm'r,* 23 Mo. 151, 159 (1856).

Plaintiffs' first point fails because (a), (b) and (c), although factually accurate, do not justify a finding of express warranty of title by the bank, a conclusion undisturbed by (d), the latter being factually unsound.

Plaintiffs' second "point relied on" is that the trial court erred in not finding in their favor on Count II "because the undisputed evidence disclosed there was a mutual mistake of fact. Both plaintiffs and defendant believed, in good faith, that the foreclosure sale would convey good title."

This contention lacks foundation in fact. DeReign, who acted on behalf of the bank (and Goff), as trustee, knew (and the bank knew) that Goff had only a life estate. Moreover, that knowledge was conveyed by DeReign to Duane and by the letter to Elmo and Reeves. The information given by DeReign was replete with "storm warnings."—"A purchaser would be buying a lawsuit."—"If I were you I would not be interested in buying the property."—DeReign would not "pass the title."—DeReign "was spooked about the title." DeReign went over the abstract with Duane and explained to him why DeReign did not think Goff had a fee simple title.

Plaintiffs were represented by a banker and a lawyer. A layman could understand, from the message DeReign conveyed to Duane, that the condition of Goff's title was, to say the least, in doubt. Far from concealing from Duane the condition of the title, DeReign painstakingly pointed out its defects.

The plaintiffs argue that there was "a mistake of fact" on the part of the bank in believing that Goff had a fee simple title in that *Harper* so thought. But it was DeReign, as trustee, who was conducting the foreclosure for the bank, as its agent, and there is no doubt that DeReign knew that Goff had only a life estate and had imparted that knowledge to plaintiffs by his conversation with Duane.

Plaintiffs' assertion that they were mistaken about the title is based on testimony by Elmo to the effect that he believed "the bank had a good deed of trust," *after receiving Reeves' letter of June 7, 1974.* "With the storm signals up plaintiffs easily could have settled the uncertainty and ascertained the truth of the facts by having the property lines surveyed before making their bid but they did not do so. Equity will not relieve against mistake when the complaining party had within his reach the means of ascertaining the true state of facts and, without being induced by the other party, neglected to avail himself of his opportunities of information. *Brown v. Fagan,* 71 Mo. 563; *Barrett, Fitch, North & Co. v. Hudson,* Mo.App., 403 S.W.2d 944, 947[2]." *Croy v. Zalma Reorganized School District R–V,* 434 S.W.2d 517, 522[7] (Mo. 1968). See also *S. G. Payne & Co. v. Nowak,* 465 S.W.2d 17, 20[3] (Mo.App.1971).

Why did plaintiffs, having been warned by DeReign of the nature of Goff's title, proceed to purchase? Perhaps the answer lies in evidence offered by the *plaintiffs* to the effect that Reeves, after informing Elmo that he had checked the title and it was all right, "voiced the opinion that Mr. DeReign's refusal to comment upon the title or let anyone examine a copy of his title opinion was probably prompted, in Reeves' opinion, by a desire to sell an abstract or require the services of an examining attorney to obtain a title opinion and not any effort to conceal a mistaken title opinion." *This* mistake on the part of Reeves, as to DeReign's motives in not permitting Reeves to have a copy of Exhibit A, was not a mutual one. The bank had no knowledge of it.

Exhibit A was written in 1972. Although its contents were literally correct, it could easily have been misleading, as DeReign testified. The fact that Exhibit A's contents were true did not justify the conclu-

7. L.R. 17 Statutes 115–206. (44 & 45 Vict. Ch. 41, sec. 71)

sion that Goff had a fee simple. Indeed it is plaintiffs' theory in this action that Goff had only a life estate and that Case No. 16106 and the opinion of the supreme court in 262 S.W.2d 851 did not have the legal effect of confirming a fee simple title in Goff. Yet those are the only material recitals in Exhibit A. Plaintiffs' untenable position is that Reeves was entitled to reach the conclusion that Goff had a fee simple title based upon the contents of Exhibit A which Harper read to him, and at the same time plaintiffs are claiming that the recitals in Exhibit A, although literally true, do not justify that conclusion.

Exhibit A could mislead its reader and was probably calculated to do so. This court condemns Exhibit A and the type of draftsmanship it represents. "A true representation may not be used to create an impression substantially false for the purpose of deception." *Stone v. Hammons,* 347 Mo. 129, 146 S.W.2d 606, 608[9] (1940). If Exhibit A had been the only information imparted to plaintiffs, or their banker and attorney, a different situation would be presented. The trial court, however, properly could have found that Exhibit A did not, directly or indirectly, induce plaintiffs' purchase.

Plaintiffs and Duane and Reeves could not have been misled by Exhibit A for the reason that DeReign explained at length to Duane that Goff had only a life estate and gave him the various admonitions which in turn were relayed to Elmo and Reeves. Plaintiffs and their banker and lawyer knew that regardless of what Exhibit A, *in 1972,* said or purported to say with respect to Goff's title, its author DeReign was of the opinion, *in 1974,* and prior to the foreclosure sale, that Goff had only a life estate. Reeves also knew that DeReign was the attorney and title examiner and that Harper, a layman, was merely reading to him DeReign's opinion as set forth in Exhibit A. There was no mutual mistake and plaintiffs' second point is without merit. *Croy v. Zalma Reorganized School District R–V; S. G. Payne & Co. v. Nowak*; both supra; *Barrett, Fitch, North & Co. v. Hudson,* 403 S.W.2d 944 (Mo.App.1966).

Plaintiffs' third "point relied on" is that the trial court erred in not finding in their favor on Count III "because the undisputed evidence discloses unfairness and misconduct by the trustee in the foreclosure sale" in that the trustee rendered an erroneous title opinion (Exhibit A) but did not disclose the true facts to the bidders at the sale. Further, plaintiffs say, DeReign's instructions to the bank not to let anyone see Exhibit A "denotes active concealment."

In *Nixon v. Franklin,* 289 S.W.2d 82 (Mo. 1956), an action by the purchasers of land to rescind the transfer, defendant Franklin knew he had only a life estate. The contract provided that Franklin would convey to plaintiffs "merchantable title." Franklin gave plaintiffs a warranty deed which included "grant, bargain, and sell." The court held that the plaintiffs were entitled to rescission and were not limited to an action on the covenants.

The court said that "apart from any affirmative misrepresentation, C. H. Franklin was obliged to disclose any impairment of his title known to him." *Nixon,* 289 S.W.2d at p. 88. On the same page the court said: "Courts of equity, in dealing with the subject of fraud in transactions between parties, have long since fully recognized that there are certain acts, when done willfully and intentionally respecting a transaction between the parties, would constitute actual fraud, and that the omission to do certain things, or the concealment of facts which are material to the party with whom you are dealing, by which an undue advantage is taken of your adversary in the deal, would also constitute a fraud, not upon the basis that the omissions or concealments were willful and intentional, but predicated upon the ground that it operated as a fraud upon the party with whom you are dealing."

A trustee at a foreclosure sale "acts as the trusted agent for all parties and must protect all of them" and "where the trustee's conduct in conducting a foreclosure sale is unfair and causes injury to one of the parties even though such conduct was

unintentional, the sale is tainted." *Stone v. Hammons,* supra, 146 S.W.2d at 608[5]. A foreclosure sale may be set aside for the misconduct of the mortgagee. *Stone,* 146 S.W.2d p. 608[7].

In *Hayes v. Delzell,* 21 Mo.App. 679 (1886), a trustee failed to disclose that a portion of the land mentioned in the fore-closure notice read at the sale had been previously released. The trustee was held liable, in an action for deceit, to the pur-chaser who was unaware of the prior re-lease.

It is true that DeReign made no an-nouncement at the sale concerning Goff's title. Whether or not he had a duty to do so need not be decided for the reason that plaintiffs are not in a position to complain about his silence at the sale. Prior to the sale DeReign made total disclosure to plain-tiffs, through Duane, of the condition of Goff's title. Plaintiffs' third point has no merit.

The judgment is affirmed.

HOGAN, J., concurs.

BILLINGS, C. J., dissents in separate dis-senting opinion filed.

BILLINGS, Chief Judge, dissenting.

I dissent.

I would hold that in view of Exhibit A, which was read to Reeves by Harper, one could justifiably conclude that DeReign had approved the title and Goff had mortgaged a fee simple title to the bank. Further, that under the facts and circumstances out-lined in the principal opinion the bank's attorney, DeReign, serving as trustee at the foreclosure sale, had an affirmative duty at the sale to disclose the true condition of the title—in view of his prior title opinion and after thoughts. At the very least, in my opinion, the parties were mistaken as to Goff's title and a court of equity should grant plaintiffs' relief.